No. 13,093.

## FITZMAURICE v. MOSIER.

PROMISSORY NOTE.—*Payment.*—*Cancellation.*— *Power of Court to Decree.*— Where the maker of a promissory note has fully paid the same, but the payee refuses to surrender it, and keeps it in his possession, claiming still to own it, the maker may maintain a suit in equity for its cancellation, notwithstanding he has a complete defence at law.

SAME.—*Note Executed by Mistake.*—Where a promissory note was executed by the maker in the belief that it was in payment of a debt due the payee, which belief was created by the representations of the latter or his attorney, whereas the debt was not that of the maker, but of a different person, a court of equity will decree the cancellation of the note.

From the Randolph Circuit Court.

*W. A. Thompson, A. O. Marsh* and *J. W. Thompson,* for appellant.

*A. J. Stakebake,* for appellee.

NIBLACK, J.—Complaint by Christian Mosier against William Fitzmaurice, in two paragraphs. The first paragraph averred that the plaintiff, on the 3d day of January, 1882, executed to the defendant his promissory note for the sum of $34.86, payable fifteen days after date, without relief from valuation laws; that the plaintiff afterwards, and during the year 1882, fully paid the debt of which such note afforded the evidence, but that the note was not delivered up to the plaintiff at the time it was paid; that the plaintiff had, divers times since the note was so paid, demanded of the defendant that it be surrendered for cancellation, but that the defendant had refused to so surrender the note, of which he was still in the possession, and which he still claimed to own.

The second paragraph alleged that, on the 3d day of January, 1882, the defendant made out an itemized account against one Christian Mosier and brother, for the sum of

$34.86, and placed the same in the hands of one Lewis, an attorney at law, for collection; that the plaintiff was not the Christian Mosier named in said account, nor was he in any way liable to pay such account, or the debt represented by it; that the plaintiff was, at the same time, indebted to the defendant in an account, but in another and a different one from that left in the hands of Lewis for collection as above stated; that the said Lewis, who was the attorney for the defendant, and who acted for him, and at his instance, represented to the plaintiff that he had his, the plaintiff's, account also in his hands for collection or settlement; that the plaintiff, relying on said representation, and believing the same to be true and that he was settling his own account, executed to the defendant, and delivered to the said Lewis, the promissory note described in the first paragraph hereof; that said note was, in the manner stated, executed by mistake and without any consideration whatever; that it was not given for the benefit of the said Christian Mosier and brother, nor to secure the debt owed by them; that the defendant was then the holder and in the possession of said note, claiming to be the owner thereof; that the plaintiff had frequently demanded the surrender and cancellation of said note, but that defendant had refused to surrender the same and to permit the cancellation thereof; that the defendant had threatened to negotiate the note to innocent parties and to cause suit to be instituted thereon. Wherefore the plaintiff prayed that the note might be required to be surrendered and cancelled, and that the defendant might be perpetually enjoined from either negotiating or instituting suit upon said note.

Separate demurrers were overruled to both paragraphs of the complaint, and after issue joined and a hearing, the circuit court made a finding for the plaintiff and decreed accordingly. Error is assigned upon the overruling of the demurrers to both paragraphs of the complaint.

It is claimed that, upon facts stated in the first paragraph

of the complaint, Mosier had a complete defence at law against the note alleged to have been paid, and that, consequently, the refusal of Fitzmaurice to surrender the note afforded no ground for the equitable relief demanded, and authorities are cited in support of the doctrine thus contended for.

The American doctrine on the subject of equitable jurisdiction restricts courts of equity, as a general rule, to narrower limits than does the English doctrine on that subject. This has resulted partly from the tendency of legislation in that direction, and partly from the construction given to our constitutional guarantees relating to the right of trial by a jury. With us the generally accepted doctrine is, that the exclusive jurisdiction to grant equitable relief, such as cancellation, will not be exercised, and the concurrent jurisdiction to grant pecuniary recoveries does not exist, in any case, where the legal remedy, either affirmative or defensive, which the injured or defrauded party might obtain, would be adequate, certain and complete.

It is not enough, however, that there is a legal remedy. To exclude the equitable jurisdiction, the legal remedy must meet all the requirements of justice, and be, in all respects, as satisfactory as the relief furnished by a court of equity. Latterly the tendency has been towards a relaxation of the American doctrine as stated, and particularly so in the States which have adopted codes of civil procedure, sometimes denominated the Code States.

In Pomeroy's Equity Jurisprudence, one of our most modern as well as most approved works on the subject to which it relates, it is said, at section 1377, that "A doubt was formerly entertained as to whether a court of equity ought to exercise its jurisdiction to order instruments absolutely void at law, and not merely voidable, to be delivered up and cancelled, since the legal remedy of a party was adequate and complete, and no case was presented for equitable interference; but it is now well settled that jurisdiction will

be exercised in such cases, except where the invalidity of the instrument is apparent on its face." See, also, Pomeroy, *supra*, sections 297, 914.

Our cases are in entire accord with the modern rule thus announced by Pomeroy, and some of them have, perhaps, advanced upon it to some extent in its application to certain classes of instruments, which, though void on their face, constitute nevertheless a cause of irritation, annoyance or embarrassment so long as they are permitted to remain in the hands of the adverse party.

In the recent case of *Otis* v. *Gregory*, 111 Ind. 504, this court said : " Whatever may have been formerly held in other jurisdictions in respect to the cancellation of void contracts, the doctrine that a party to an instrument, which is of no legal force or validity whatever, may ask the aid of a court of equity in procuring its surrender and cancellation, is now fully set at rest here. It is regarded as against conscience, that one party should persist in holding a deed or other instrument against another of which he can make no possible use except as a means of embarrassing his adversary." This statement as to the limit to which equitable jurisdiction extends in this State, is, as we believe, well supported by the weight of modern authority, and rests upon sound principles of remedial justice. On the same general subject, see, also, the cases of *Bishop* v. *Moorman*, 98 Ind. 1, and *Scobey* v. *Walker*, 114 Ind. 254.

According to the averments of the paragraph of complaint under consideration, Mosier had fully paid the note therein described, but Fitzmaurice had, upon demand, refused to surrender it for cancellation, and continued in possession of the note, claiming still to own it. This condition of affairs constituted an element of disturbance between the parties, and a standing menace as well as cause of embarrassment to Mosier, entitling him to immediate equitable relief. To have required Mosier, under such circumstances, to await the pleasure of Fitzmaurice, or his executor, administrator or

assignee, in bringing suit on the note might have resulted injuriously to his interests.   The lapse of time often makes it more difficult to prove an affirmative defence.

Courts of equity have, in an especial manner, jurisdiction of all matters involving fraud, mistake or accident.   The second paragraph of the complaint before us sought relief from the consequences of a mistake made in the execution of a promissory note, and made what appears to us to have been a good *prima facie* case in that respect.

The judgment is affirmed, with costs.

Filed March 24, 1888.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—There is much reason for extending the equity powers of the court where, as with us, there are no separate tribunals, but the rules of law and equity are administered by the same court.   There is no good reason why a court should not exercise its equity power to direct the cancellation of a promissory note that justice requires should not be enforced.   We can perceive no reason why a court may not decree the cancellation of a note which is shown to be entirely without validity and to have been wrongfully procured.   We think the second paragraph of the complaint states a case in which justice will be subserved by decreeing the cancellation of the promissory note of the plaintiff in the hands of the defendant.   That paragraph shows that the note in question was executed by the plaintiff in the belief that it was in payment of a debt due the defendant, that this belief was created by the representations of the latter, and that the representations were untrue, inasmuch as the debt was not that of the plaintiff, but of a different person.   By means of the untruthful representations the defendant secured the promissory note of the plaintiff for an entirely different purpose from that for which he intended to execute it, and for which he believed he was executing it.   We can not

Fitzmaurice v. Mosier.

agree with appellant's counsel that the pleading simply shows a case of failure of consideration or of payment; on the contrary, we are satisfied that it shows (not as definitely and clearly as it might be desired, it must be said), that by false representations the defendant induced the plaintiff to execute a promissory note for a purpose entirely different from that for which he believed he was executing it. If, however, we take the more favorable view to the appellant and hold that the note was executed by mistake, we must decide the case against him, for, even on this theory, we should be compelled to hold that there was a material mistake of fact brought about by the false statements of the appellant, and that a note executed because of such a mistake can not be enforced. *Parrish* v. *Thurston*, 87 Ind. 437.

Where the defendant knows that the plaintiff believes he is contracting about a different subject from that actually dealt with, it is a fraud on the defendant's part to remain silent and reap an advantage from the silence. Of course, if the defendant has no knowledge of the belief of the plaintiff it is otherwise; here, however, the defendant not only knew of the plaintiff's belief, but he, by positive statements, created that belief.

The pleading is a clumsy one, and it is not without hesitation that we give it the construction we have done. We think, however, that as it shows that the defendant's agent, who conducted the transaction, had not in his hands, as represented, the bill against the appellee, and for which, relying on the agent's representations, the note was executed, it is justly inferable that the note was executed for a debt different from that for which the appellee intended to execute it and for which he believed he was executing it.

Petition overruled.

Filed Dec. 20, 1888.