## HAINES v. TRUEBLOOD ET AL.

[No. 9,922. Filed April 24, 1918.]

1. DRAINS.—Establishment.—Petition.—Requisites.—Drainage Commissioners.—Report.—Statute.—While under §6141 Burns 1914, Acts 1907 p. 508, §2, a petitioner for drainage is required to state generally in his petition his belief respecting the best and cheapest manner in which the proposed drainage may be accomplished, such statement is not binding on the drainage commissioners, since they are required, in case they report in favor of the drainage, to determine all questions of terminus, route, location, etc., of the proposed work, subject, however, to the ultimate determination of the court. p. 461.

2. PLEADING.—Pleading Conclusions.—Sufficiency.—Statute.—Under §343a Burns 1914, Acts 1913 p. 850, as to the construction of pleadings, the pleader's conclusions must be construed, in determining the sufficiency of a pleading, as equivalent to the averment of all the facts required to sustain such conclusions. p. 462.

3. DRAINS.—Establishment.—Rights of Landowners.—Petition.—Remonstrance.—Statutes.—Under §§6141, 6143 Burns 1914, Acts 1907 p. 508, §§2, 4, a petitioner ordinarily has as strong a right to petition for drainage as has a landowner to remonstrate against it, and neither may be heard to complain that the other has exercised the right granted him by statute. p. 462.

4. DRAINS.—Establishment.—Legal Remedy to Prevent.—Remonstrance.—Prima facie the statute (§6141 et seq. Burns 1914, Acts 1907 p. 508) affords owners of lands within a drainage district, although not named in the petition, a full and adequate legal rem-

Haines *v.* Trueblood—67 Ind. App. 456.

edy by remonstrance; and even though there is no remonstrance, or if one is filed and overruled, the establishment of the proposed drainage does not necessarily follow. p. 463.

5. DRAINS.—*Establishment.—Remonstrance.—Right to Drainage.*— Landowners by repeatedly remonstrating against a drainage petition repeatedly filed, and thus successively preventing its reference to the drainage commissioners and procuring its dismissal, do not thereby deprive the petitioners of any right, since there is no absolute right to drainage under any particular petition directed to any particular physical situation. p. 463.

6. INJUNCTION.—*Right to Relief.—Adequate Legal Remedy.*—That there is a remedy at law is not alone enough to defeat injunction, but the legal remedy must be as plain, complete and adequate as the remedy in equity. p. 465.

7. DRAINS.—*Establishment.—Remonstrance.—Equitable    Relief.*— In the case of an ordinary petition for drainage the legal remedy by remonstrance is fully adequate, and for that reason alone recourse to equity to enjoin the establishment of the drain should be denied. p. 465.

8. INJUNCTION.—*Right to Relief.—Adequacy of Legal Remedy.— Determination.*—In determining the adequacy of legal remedies, some weight is given the fact, if it exists, that such remedies are vexatiously inconvenient, or that a denial of equitable relief results in irritation, annoyance and embarrassment which might be relieved by its application. p. 465.

9. INJUNCTION.—*Grounds.—Multiplicity of Suits.*—Equity may be invoked to prevent a multiplicity of suits or for the purpose of suppressing litigation when otherwise there would be actions at law unnecessarily or burdensomely numerous. p. 466.

10. INJUNCTION.—*Grounds.—Establishment of Drain.*—Where a landowner fraudulently joined with his attorney in filing repeated and vexatious petitions for the establishment of a drain in order to enable the attorney to collect fees and to repeat the filing of the petition until the opposition would fail to file a remonstrance, the adverse landowners were entitled to injunction restraining the repeated filing of such petition. p. 466.

From Madison Superior Court; *Willis S. Ellis,* Judge.

Action by Edward Haines against William N. Trueblood and others. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*Kittinger & Diven,* for appellant.
*Arthur C. Call,* for appellees.

CALDWELL, J.—Appellant brought this suit to procure a decree enjoining appellees from proceeding further with a certain petition and from filing other petitions for the drainage of lands in Madison county. Judgment that he take nothing, and for costs, was rendered against him by reason of his refusal to plead over on the sustaining of a demurrer to his complaint. It is alleged in the complaint that appellant owns lands that would be affected by the proposed drainage, and that he sues in behalf of himself and also at the request, and for the benefit, of a large number of other landowners situated similarly to himself and so numerous as to render it impracticable to bring them all before the court.

The complaint covers twelve pages of the transcript. A brief summary of the substantial facts disclosed by it is as follows: Appellee Trueblood owns a seven-acre tract of land in Madison county which drains naturally, and in fact is drained into Fall creek, and which will not be affected or benefited by a drainage system in or along Lick creek. Trueblood and an attorney who represented him as such in all the drainage proceedings hereinafter mentioned, fraudulently confederated together for the purpose of procuring the widening, deepening and straightening of Lick creek between certain points, under the drainage laws of the state, their purpose being to procure for Trueblood's attorney an allowance of a large amount of attorney fees. The proposed drainage would cost many thousands of dollars, and would affect the lands of 700 landowners who do not want or need the proposed drainage. Trueblood hopes

and intends to accomplish his purpose by repeatedly filing other petitions in succession as those theretofore filed are dismissed one by one by reason of the filing of remonstrances under the statute by two-thirds of the landowners affected, and this he declares he will continue to do until the opposing landowners have become weary of the contest and therefore cease resistance.

On July 26, 1913, Trueblood, with others procured by him, filed in the Madison Circuit Court a petition for the drainage of his said lands, by the dredging, widening, deepening and straightening of Lick creek between certain points. Within the time fixed by the statute, about 600 landowners of the class authorized by the statute to do so, and being more than two-thirds of such class, filed a remonstrance against the proposed drainage, whereupon petitioners dismissed the petition, and on the same day filed a second petition of like import as the first, to which within the time specified by statute there were filed remonstrances signed by more than 700 qualified landowners and being more than the two-thirds necessary to procure a dismissal of the petition. Trueblood thereupon having caused a third petition of like nature as the first and second to be prepared, filed it also, and two days later dismissed the third petition. At this stage of the proceedings this action was commenced. Subsequently a supplemental complaint was filed, alleging among other things the filing of a remonstrance by appellant and more than 600 other landowners against the drainage proposed by the third petition, the dismissal of the third petition by reason of the remonstrance, and that appellees thereupon

filed a fourth petition, the same in substance as those that preceded it.

The complaint contains other averments of facts to the effect that each of such petitions was fraudulently prepared and filed; that appellees were able to file successive petitions at comparatively small expense to themselves, but that the work of causing successive remonstrances to be prepared, signed and filed is very expensive to the landowners, both in money and time; that in each of such petitions appellees named only from twenty to forty landowners as likely to be affected by the proposed drainage, and that with knowledge of the facts they omitted therefrom 600 to 700 other landowners whose lands will be affected by the drainage if accomplished; that said petition in each case was pestiferous, and was not prosecuted to secure drainage, but for the fraudulent, corrupt and sole purpose of extracting money from landowners to pay said attorney and Trueblood and others a large amount as attorney fees, to be derived from assessments for said improvement, and that the fraudulent and corrupt confederation between Trueblood and his attorney was entered into and is being carried out for that purpose alone, and that each of the petitions was filed for that purpose and for no other or different purpose; that the proceeding is therefore unlawful, wrongful and oppressive; that by virtue of said confederation and their said fraudulent and successive actions pursuant thereto. Trueblood and his attorney intend to harass and hope to wear out the opposition of the landowners and entail upon them such constantly recurring trouble and expense in remonstrating that eventually they will grow weary and permit the drainage to be accomplished, and that

Trueblood declares that he will continue in his said fraudulent and oppressive course until such end is attained; that the proceeding has become pestiferous, wrongful and oppressive; that, in the event of such drainage, Trueblood's assessment will be small and will be paid out of fees allowed his attorney. As to appellees other than Trueblood it is alleged that, while not named in the successive petitions as landowners, they signed a statement on a separate page of certain of the petitions to the effect that they owned certain undescribed lands that would be affected by the proposed drainage, and they therefore prayed that it be established. It is alleged also that they participated in some of Trueblood's alleged fraudulent conduct with knowledge of the facts. The relief sought by the complaint is that appellees be enjoined from proceeding further with the pending drainage petition, and from filing other petitions for the drainage of Trueblood's lands.

It is alleged in substance that the description of the proposed drainage improvement as contained in the successive petitions differed somewhat in termini, but that each and all of the petitions would have directed the attention of the ditch commissioners to the same physical situation, had such petitions been submitted to them for view and report, and that the landowners likely to be affected were practically the same in each case.

The fact that such descriptions do differ as indicated is, however, unimportant. While a petitioner for drainage is required to state generally in 1. his petition his belief respecting the best and cheapest manner in which the proposed drainage may be accomplished, such belief so stated is not

binding .on the drainage commissioners, since they are required, in case they report in favor of the drainage, to determine all questions of termini, route, location, etc., of the proposed work, subject, however, to the ultimate determination of the court in certain particulars. §§6141-6143 Burns 1914, Acts 1907 p. 508, §§2-4.

The complaint contains certain averments in the nature of conclusions. These, however, as against demurrer and to the extent necessary to its 2. sufficiency, must be held to be equivalent to the averment of all the facts required to sustain such conclusions. §343a Burns 1914, Acts 1913 p. 850.

The right to petition for drainage is a statutory right. §6141, *supra*. Appellees, therefore, were authorized to petition for the drainage involved 3. here. In case drainage petitioned for is established, the statute provides for an allowance of. fees to petitioners' attorneys, payable out of the assessments, the amount of the latter regulating the amount of the former. §6144 Burns 1914, *supra*. Likewise the right to remonstrate by numbers is a statutory right. The statutory provision is to the effect that, if within a specified time two-thirds in number of the landowners named as such in the petition, or who may be affected by any assessment or damages, and who live in the county or counties where the lands affected are situated, shall remonstrate in writing against the construction of the drainage, the petition shall be dismissed. §6142, *supra*. It thus appears that at least in any ordinary case a petitioner has as strong a right to petition for drainage as has a landowner to remonstrate against it, and that neither the former nor the latter may be heard

to complain of the other that he has exercised the right granted him by statute.

It may be said also that *prima facie* it appears that the statute affords to landowners of the class indicated, although not named as such in the petition, a full and adequate legal remedy. Moreover, while the right to remonstrate by numbers is a statutory right, the failure to remonstrate does not necessarily lead to the establishing of the proposed drainage. The only effect of the failure of a sufficient number of authorized landowners so to remonstrate is the reference of the petition to the drainage commissioners when the court finds it to be sufficient. If the drainage commissioners on such submission determine in the negative any one of several questions, the petition must be dismissed. But, as we have said, even though the drainage commissioners report in favor of the proposed drainage, it rests with the court to determine ultimately, when properly presented, whether the drainage as reported shall be established, or whether the proceeding shall fail. §6142, *supra.*

It thus appears that there is no such thing as an absolute right to drainage under any particular petition directed to any particular physical situation. Drainage sought by petition may be defeated by a remonstrance, by a report, or by the determination of the court. There is no absolute right to have a drainage petition drawn with reference to a certain topographical location, referred to the drainage commissioners. There is no such right at all where landowners of the class and in the numbers specified stand in opposition to the proposed improvement, and indicate their opposition as pre-

scribed. Where opposition is so indicated, it serves merely to inform the court that the right to have the petition referred for report does not exist. It therefore follows that landowners, by repeatedly remonstrating against a petition repeatedly filed, and thus successively preventing its reference and procuring its dismissal, do not thereby deprive the petitioners of any right. They thereby merely demonstrate that what is sought as an advantage does not exist as a right.

Such is the case here: Under the allegations of the complaint the requisite number of qualified landowners are opposed to the drainage improvement. They have repeatedly demonstrated their opposition in the statutory manner. They stand ready to continue to do so, if need be. They have thereby established and are ready to continue to establish that the right does not exist in appellees to have the petition here referred. To do so, however, requires in each case much labor and the expenditure of large amounts of money. But appellees declare that they will create in themselves the semblance of a right by compelling the landowners through utter weariness to abstain from filing remonstrances. A petition is filed; it is dismissed by reason of a remonstrance; its practical similitude is at once again filed, followed by another remonstrance, and thus a contest in endurance goes on, the one party seeking to create the equivalent of a right by compelling the other party to forego a right. The one party seeks to create the semblance of a right, not because the natural fruits thereof are desired, but for certain improper purposes, to be attained by improper means exercised in an improper spirit. May such a contest proceed with-

out limitation? Is the arm of equity long and strong enough to intervene?

As we have said, appellant and the other landowners involved have a remedy at law by reason of the statutory right to remonstrate. However, "It 6. is not enough to defeat injunction that there is a remedy at law. It must be as plain, complete, and adequate—or, in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity." *Meyer* v. *Town of Boonville* (1903), 162 Ind. 165, 70 N. E. 146.

As measured by the foregoing limitation, there can be no doubt that in case of the ordinary petition for drainage, the legal remedy by remonstrance 7. is fully adequate, and that on account of the existence of such remedy, if for no other reason, recourse to equity should be denied. Here, however, we are not dealing with an ordinary proceeding for drainage.

In determining the adequacy of legal remedies and the consequent superiority of equitable remedies, some force is given to the fact, if it exists, that 8. the former are vexatiously inconvenient, or that a denial of the latter results in irritation, annoyance and embarrassment readily relieved by the application of such remedy. 10 R. C. L. 278; *Fitzmaurice* v. *Mosier* (1888), 116 Ind. 363, 16 N. E. 175, 19 N. E. 180, 9 Am. St. 854.

"In cases where the oppressive character of the litigation involved throws upon the plaintiff an unusual and unconscionable expense and annoyance, equity has jurisdiction to remove a cloud upon his title, notwithstanding a remedy exists at law." *Town*

*of Corinth* v. *Locke* (1890), 62 Vt. 411, 20 Atl. 809, 11 L. R. A. 207.

Likewise equity may frequently be invoked to prevent a multiplicity of suits (*Royer* v. *State, ex rel.* [1916], 63 Ind. App. 123, 112 N. E. 122, 113 N. E. 312), or for the purpose of suppressing litigation when otherwise there would be actions at law unnecessarily or burdensomely numerous. *Lewis* v. *Rough* (1866), 26 Ind. 398.

These principles seem to be applicable to the situation here. The successive filing of the petition for drainage under the circumstances presented by the complaint, rendering necessary the repeated preparation and filing of remonstrances, unless the landowners abandon a statutory right, and especially in view of the declared purpose to continue the filing of such petition as often as it meets with an enforced dismissal, and until all opposition is destroyed, presents a case of multiplicity in legal procedure at once irritating, annoying and vexatious, and apparently unjustifiably so, in a high degree.

We have discovered no decision bearing directly on the question of the right to injunctive relief under the specific facts presented by the complaint. We may obtain some light, however, from a consideration of analogies. Thus, after the introduction of the remedy in ejectment to try titles to real estate, it was the doctrine of the common law that one might resort to that remedy as often as he pleased to try his title. Thereupon courts of equity extended to parties litigant a remedy through a bill of peace that they might be relieved from the inconvenience and annoyance of constantly repeated actions in ejectment, and that the questions in dispute might be determined once for

all. 10 R. C. L. 282; 14 R. C. L. 348. A bill of peace is defined as "a bill filed in equity, praying for an injunction to stay a large number of separate suits involving the same right, or to prevent the vexatious recurrence of inconclusive litigation of the same right, and to adjudicate finally the whole controversy in the one suit. It is designed to secure repose from perpetual litigation." 3 Ency. Pl. and Pr. 556. That there is a close analogy between the situation here and the circumstances under which the application of one class of bills of peace might be invoked is apparent.

Likewise, for an ordinary trespass the law affords an adequate remedy in damages. The courts recognize, however, that an act of trespass may be so frequently repeated, and so continuously persisted in that such a remedy becomes inefficient, thereby arousing equitable jurisdiction and calling for the application of equitable remedies. Thus, "if the trespass is *continuous* in its nature, if repeated acts of wrong are done or threatened, although each of these acts, taken by itself, may not be destructive and the legal remedy may therefore be adequate for each single act *if it stood alone,* then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions." 4 Pomeroy, Eq. Jurisp. (4th ed.) §1357. That courts frequently apply equitable remedies in case of repeated trespasses is well settled. See the following: *Wirrick* v. *Boyls* (1909), 45 Ind. App. 698, 91 N. E. 621; *Knickerbocker Ice Co.* v. *Surprise* (1912), 53 Ind. App. 286, 97 N. E. 357, 99 N. E. 58; *Haines* v. *Hall* (1888), 17 Ore. 165, 20 Pac. 831, 3 L. R. A. 609, and.

note; *Town of Corinth* v. *Locke, supra,* and note; 10 R. C. L. 282.

While the foregoing authorities do not bear directly on the question here, we believe that the remedy there applied is broad enough to include the situation presented by the complaint in the case at bar, and that under the facts the appellant is entitled to equitable relief. It results that the court erred in sustaining the demurrer to the complaint.

The judgment is reversed, with instructions to overrule the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 119 N. E. 383.