## CHAMBERLIN v. MYERS ET AL.

### [No. 9,635. Filed October 30, 1918.]

1. LICENSES.—*Use of Land.—Revocation.*—A parol license to use the lands of another is revocable at the pleasure of the licensor, on the grounds of equitable estoppel, unless the license has been given for a valuable consideration or money has been expended on the faith that it was to be perpetual or continuous. p. 349.

2. LICENSES.—*Use of Land.—Revocation.*—A license to use the land of another executed by the expenditure of money, or given on a consideration paid, is either irrevocable altogether or cannot be revoked without remuneration. p. 349.

3. EASEMENTS.—*Additional Burdens.—Right of Owner of Dominant Estate. — Additional Servitudes. — Acquiescence. — Estoppel. —* Though the rule is that the owner of a dominant estate cannot subject the servient estate to additional burdens, such rule does not apply where the owner of the dominant estate professes to do so and afterwards becomes the owner of the servient estate, since under such circumstances the doctrine of estoppel by deed applies. p. 350.

4. ESTOPPEL.—*Easements.—Additional Servitudes.—Acquiescence.—* Where an owner of a right of way, by parol agreement, professed to confer on an adjoining owner the right to the use thereof on consideration that the way should be doubled in width by extending it an equal distance into the adjoining owner's land, and the latter, pursuant to the agreement and with the other party's knowledge, made valuable improvements in reliance thereon by the erection of fences and gates, the owner of the former right of way, after purchasing the servient estate, may not assert his after-acquired title to the damage of the adjoining owner and in derogation of the rights assumed to be conveyed by the agreement. p. 351.

5. EASEMENTS.—*Quieting Title.—Evidence.—Burden of Proof.*—In a suit to quiet title to the use of an easement over land, it is necessary for the plaintiff to show only a license, the payment of a consideration, or the expenditure of money in reliance thereon, to establish a *prima facie* case; the burden is on the defendant to show an effective revocation. p. 351.

6. EASEMENTS.—*Rights of Owner.—Injunction.*—Where the plaintiffs, under an agreement with the defendant owner of a right of way, had acquired the right to the use of the way in consideration that it be widened by extending it an equal distance into the plaintiff's lands, injunctive relief was properly granted to prevent the defendant from closing the part of the way on his land, the legal remedy in damages not being as practicable, efficient and adequate. p. 352.

7. EASEMENTS.—*Rights of Owner.—Injunction.—Evidence.—Statu Quo.*—In an injunction suit to prevent obstruction of an easement over another's lands, evidence tending to show that the defendant, the owner of the original right of way, had given the plaintiffs the right to the use thereof in consideration that the way be doubled in width by extending it an equal distance into their lands, that the plaintiffs had carried out the agreement and had constructed fences and gates, pursuant thereto, that if the defendant were permitted to close up the part of the way on his lands, as he would do if not enjoined, the remaining way would be so narrow that ordinary vehicles could not pass or turn from the way through the gates into their lands, was sufficient to show that the closing up of such part of the way would not leave the plaintiffs in *statu quo.* p. 353.

From Hamilton Circuit Court; *Ernest E. Cloe,* Judge.

Action by Sarah C. Myers and others against Lewis Chamberlin. From a judgment for the plaintiffs, the defendants appeal. *Affirmed.*

*Christian & Christian* and *Ralph H. Waltz,* for appellant.

*Shirts & Fertig,* for appellees.

BATMAN, J.—This is an action brought by appellees against appellant to quiet their title to the free use and enjoyment of a certain right of way as a per-

petual means of ingress and egress to and from their lands, and to enjoin appellant from closing the same and from interfering therewith. The cause was tried on issues formed by a complaint in two paragraphs, answered by a general denial. Upon request the court made a special finding of facts, which is substantially as follows: In the year 1900 and prior thereto Michael C. Myers was the owner of the west half of the southwest quarter of section 24, township 20 north, range 3 east, in Hamilton county, Indiana. One Job Pickett was the owner of the northeast quarter of the southeast quarter of section 23, in said township and range, and one Levi Burris was the owner of the southeast quarter of the southeast quarter of said section 23, except that the said Burris had granted to said Pickett a right of way eleven feet wide off of the east side of said southeast quarter of said southeast quarter, as a way of ingress and egress to and from said northeast quarter of said southeast quarter, to the highway running east and west along the south line of said sections 23 and 24, which was the only highway touching any of said lands. Prior to the granting of the right of way the lands owned by Burris and the lands owned by Myers were separated by a partition fence constructed of rails, the south half of which belonged to Burris and the north half to Myers. When said Burris granted the right of way to said Pickett, he moved his half of the fence eleven feet to the west, and a like fence was constructed northward on the west line of the right of way to the lands of said Pickett. Said Myers built a fence on that part of the line from which the fence was removed by Burris, so that the right of way was inclosed by a rail fence on each side throughout the

entire length thereof. Said way was of the width of ten or eleven feet, with a gate at the north end opening into the lands of Pickett, and was used by him and by those having occasion to go to and from his premises and by no other persons, said Myers having been forbidden to use the same by said Burris. The buildings on the lands of Myers were located at the north end of the right of way, and near the southwest corner of the north half of his lands. Said Myers died, and plaintiffs became the owners of the west half of said section 24 through his will, which devised to Henry Myers the north one-third thereof, to Rose Myers the middle one-third thereof, and to Emily Myers the south one-third thereof, all subject to the life estate of Sarah C. Myers. Rose Myers has since died, leaving the appellees, Edgar, Fletcher and Ethel Myers as her sole heirs at law. On December 27, 1890, said Pickett sold and conveyed his said lands to the defendant, Lewis Chamberlin, and said Chamberlin took possession thereof, resided thereon, and continued to use the said way as appurtenant to his said lands in the same manner in which said Pickett had used the same until about eleven years ago, when the said Sarah C. Myers and Henry Myers, who were residing on the said lands, made a verbal agreement with the defendant, Chamberlin, whereby the said Chamberlin was to assist in moving the rail fence on the east line of said way and in rebuilding the same on a line eleven feet further east, and thereupon a strip eleven feet wide along the west line of the fence so removed was to be opened up so as to double the width of the way and make the same a joint way for the use of the lands of the said Chamberlin and of the lands of said plaintiffs. In pur-

suance to such agreement the said Chamberlin did assist in so removing and rebuilding the fence and the same was rebuilt of rails on a line eleven feet east of the dividing line, making the way about twenty-two feet wide through the entire length thereof, which was eighty rods. And thereafter the plaintiffs and said Chamberlin have used the way in common as a way of ingress and egress to and from their lands respectively. At the north end of the way the plaintiffs constructed a gate of lumber, hung on a post set in the ground, opening from said way into lots adjoining the farm buildings of the plaintiffs, so as to furnish access to the way from their said lands. Prior to the widening of the way as aforesaid the said Myers and his devisees after him, had gained access from said highway to said farm buildings by driving over the lands east of said fence and principally along a track next to said fence the same being pasture land, which was the only way they had used as an approach to said buildings. At the south end thereof, next to said line fence on the west, there was a gate opening out onto said highway, which gate was closed or removed when said fence was rebuilt. About a year after the moving of the fence and widening the way, the plaintiffs removed the rail fence on the east side of the way and rebuilt the same of wire and cedar posts set in the ground, placing the same on a line eleven feet distant from the center line of the way and continuing the said wire fence from the south end of said way eastward along said highway, also northward on both sides of said land so as to entirely inclose the same. In that part of the fence along said way plaintiffs built two gates, one at the south end, and the other about six rods south of

the north end, to provide access to said way from the fields and buildings on their said lands, which gates were constructed of lumber, and swung on hinges fastened to posts in the line of said fence. The corner posts and end posts in the fence at the gates were set five feet in the ground and anchored with rock and braces so that they cannot be removed. The defendant assisted in moving the fence, in consideration of the advantage which would accrue to him and his said lands by having said way widened for the joint use of the lands of both parties, and the plaintiffs in like manner, for like consideration, moved and rebuilt said fence and gates in good faith, relying on the said agreement and the permanent use of the widened way in common. During all the time said plaintiffs were so building the wire fence, the defendant stood by and made no objection thereto. The character of the fence and gates was such as to charge the defendant with notice that the plaintiffs intended to maintain the fence permanently on the said line and to use the way and the gates opening therein as a way appurtenant to their lands. The cost of moving and rebuilding the rail fence and of constructing the wire fence was about $95. The latter could not be removed and rebuilt without practically destroying the same and to do so would cost $80. About five years ago defendants purchased the said southeast quarter of the southeast quarter of said section 23 from said Burris, and has since moved the buildings from said northeast quarter of said southeast quarter onto the Burris tract near said highway. Before the bringing of this suit he notified the plaintiffs that he intended to move the fence on the west side of said way to the line dividing said sections 23 and 24,

and unless restrained by the court will move the same and close all that part of said way on his lands, leaving the same only ten or eleven feet in width, and wholly on the lands of the plaintiffs. This would greatly impair the usefulness and convenience of said way for the purpose of the plaintiffs and for the purpose for which it was established. It would cause material and continuous damage to the plaintiffs, and to the use and enjoyment of their said lands, by making the way so narrow that ordinary vehicles could not pass or turn therein to or from the same through the gates. In listing the lands for taxation no account has been taken of the way, but each owner of the several tracts of land has paid his respective taxes regardless thereof. The lands over which the way passes were and are of the value of $100 per acre; that portion of defendant's lands covered by the way which he threatens to close being of the value of $33.

Upon these facts the court stated as conclusions of law that appellees were entitled to a decree establishing the way to the full length thereof as bounded by the fences, as a perpetual farm way, in common and appurtenant to all of said lands of appellees and appellant, and enjoining appellant and those claiming under him from closing said way or any part thereof. On these conclusions of law judgment was rendered in favor of appellees.

Appellant filed a motion for a new trial, which was overruled, and has assigned as errors, on which he relies for reversal, that the court erred in stating each of its conclusions of law and in overruling his motion for a new trial.

The chief controversy in this case is over the rights acquired by appellees in the west half of the way by

adding the east half thereto, under the agreement with appellant, and the subsequent improvements made by them with reference thereto. It is apparent that what the parties to such agreement intended to effect thereby was an exchange of easements, and the special finding of facts clearly shows that this is what they really accomplished. If, however, we consider the agreement an attempt to exchange licenses, as the parties have done in presenting this appeal, the same result will follow.

It is well settled, on the grounds of equitable estoppel, that a parol license to use the lands of another is revocable at the pleasure of the licensor, unless the license has been given for a valuable consideration or money has been expended on the faith that it was to be perpetual or continuous. When a license has been executed by an expenditure of money, or has been given on a consideration paid, it is either irrevocable altogether or cannot be revoked without remuneration, the reason being that to permit a revocation without placing the other party in *statu quo* would be fraudulent and unconscionable. *Campbell* v. *Indianapolis, etc., R. Co.* (1887), 110 Ind. 490, 11 N. E. 482; *Nowlin* v. *Whipple* (1889), 120 Ind. 596, 22 N. E. 669, 6 L. R. A. 159; *Ferguson* v. *Spencer* (1891), 127 Ind. 66, 25 N. E. 1035; *Joseph* v. *Wild* (1896), 146 Ind. 249, 45 N. E. 467; *Knoll* v. *Baker* (1904), 34 Ind. App. 124, 72 N. E. 480; *Jann* v. *Standard Cement Co.* (1913), 54 Ind. App. 221, 102 N. E. 872.

In the instant case the special finding of facts shows that the way in question is about twenty-two feet wide; that half thereof lies on the west side of the line dividing said sections 23 and 24 and half lies on the

east side thereof; that appellant had a right to use
the west half thereof, and appellees owned the east
half thereof; that appellant agreed that, in considera-
tion of appellees granting him the right to use the
east half thereof, he would grant to appellees the
right to use the west half thereof; that in pursuance
of such agreement, and in reliance thereon, appellees,
with the knowledge of appellant, made valuable im-
provements with reference to said way. But appel-
lant contends that these facts do not bring appellees
within the rule stated above for two reasons: (1) The
special finding of facts shows that at the time of the
making of the agreement he was not the owner of the
land covered by the west half of said way, but only
had the right to use the same, and therefore his
agreement did not give appellees any rights therein.
(2) The special finding of facts does not show that
appellees have not been placed in *statu quo*.

Respecting the first reason given by appellant in
support of his contention, it should be noted that,
while the special finding of facts shows that
3.   he was not the owner of the fee-simple title to
the real estate over which the west half of said
way extends at the time of making the agreement in
question, it further shows that he acquired such title
about five years prior to the rendition of the judg-
ment in this cause. While it is true, as appellant
contends, that the owner of the dominant estate can-
not subject the servient estate to additional burdens,
it is equally true that if the owner of the former
estate professes to do so, and subsequently becomes
the owner of the latter estate, he will not be permitted
to deny his authority to create such additional burden.
*Shaw* v. *Proffitt* (1910), 57 Ore. 192, 109 Pac. 584, 110

Pac. 1092, Ann. Cas. 1913A 63.  An eminent author has said that in such a case the ordinary doctrine of estoppel by deed applies.  Washburn, Easements and Servitudes (4th ed.) 111.  Under this doctrine, a person who assumes to convey an estate by deed is estopped, as against the grantee, to assert anything in derogation of the deed.  He will not be heard, for the purpose of defeating the title of the grantee, to say that at the time of the conveyance he had no title or that none passed by the deed.  16 Cyc 686.

In this case there was no conveyance by deed, but appellant by a parol agreement, professed to confer on appellees the right to use the west half of said way, and appellees, in pursuance of such agreement and in reliance thereon, yielded the agreed consideration therefor, entered into possession thereof, and, with the knowledge of appellant, made valuable improvements with reference thereto. Under these circumstances appellant may not assert an after-acquired title, and thereby deprive appellees of the rights he assumed to confer by his agreement, to their damage.

4.

As to appellant's second reason, given in support of his contention that the special finding of facts does not show that appellees have not been placed in *statu quo,* it suffices to say that such a finding is not necessary to appellees' right of recovery.  If it be conceded that the facts of this case are such that the license granted appellees to use the west half of said way could be revoked by placing appellees in *statu quo,* the fact of revocation would be a matter of defense.  Under the rules stated above it was only necessary that appellees show a license, the payment of a consideration, or the expenditure of money in reliance thereon.  This established a

5.

*prima facie* case in their favor, and the burden was on appellant to establish the facts necessary to con-. stitute an effective revocation.

Appellant also contends that injunctive relief is not authorized, because the facts show that any injury sustained by the alleged threatened acts

6. can be fully compensated in damages by an action at law. The rule which the appellant seeks to invoke is not applicable, if such legal remedy is not as practicable, efficient and adequate as that afforded by equity. *Cincinnati, etc., Railroad* v. *Wall* (1911), 48 Ind. App. 605, 96 N. E. 389; *Shedd* v. *American Maize, etc., Co.* (1915), 60 Ind. App. 146, 108 N. E. 610. Whether a complaining party has a legal remedy which will afford complete justice must be determined under all the circumstances of the case and in view of the conduct of the parties. *Drew* v. *Town of Geneva* (1898), 150 Ind. 662, 50 N. E. 871, 42 L. R. A. 814; *Fisher* v. *Carey* (1918), 67 Ind. App. 438, 119 N. E. 376. In determining the adequacy of legal remedies and the consequent superiority of equitable remedies, some force is given to the fact, if it exists, that the former are vexatiously inconvenient, or that a denial of the latter results in irritation, annoyance, and embarrassment readily relieved by the application of such remedy. *Haines* v. *Trueblood* (1918), 67 Ind. App. 456, 119 N. E. 383. It has been held that a threatened continuous disturbance of an. owner's right of possession authorizes injunctive relief. *Miller* v. *Burket* (1892), 132 Ind. 469, 32 N. E. 309; *Brenner* v. *Heiler* (1910), 46 Ind. App. 335, 91 N. E. 744. In this case the facts show that appellees had acquired a right to the use and peaceful enjoyment of that part of the way which appellant threatens to close permanently. Any obstruction of the

same would be a violation of his right and its closing would be a denial of possession. In the light of the facts found and rules stated, we cannot say that the court erred in applying the equitable remedy.

Appellant also contends that the evidence shows that the closing of the west half of said way would leave appellees in *statu quo.* We cannot

7. agree with this view. The special finding of facts shows that, prior to the time appellees acted on the agreement with appellant with reference to widening said way, their fence was located eleven feet west of its present location, and they used a way on the east side thereof with a gate at the south end opening into the public highway; that the gate had been closed with a wire fence and two other gates constructed in their fence on the east side of the way; that, if the west half of the way were closed and a fence built on the line dividing said sections 23 and 24, the remaining way would be so narrow that ordinary vehicles could not pass or turn therein. These facts are sustained by the evidence, and clearly show that the closing of the west half of the way would not leave appellees in *statu quo,* as contended by appellant.

The other contentions made by appellant with reference to the action of the court in overruling his motion for a new trial are fully covered by what we have said relating to the correctness of the conclusions of law, and therefore do not require further consideration.

We find no error in the record. Judgment affirmed.

Note.—Reported in 120 N. E. 600. Licenses: to maintain a burden on land after the licensee has incurred expenses in creating the burden, revocability, 49 L. R. A. 505. See under (1, 2) 25 Cyc 645-649; (6) 35 L. R. A. (N. S.) 193, 19 C. J. 992.