J. Z. BENEDICT, Appellee, v. HALL MANUFACTURING COMPANY, Appellant.

No. 40596.

APRIL 10, 1931.

*Trewin, Simmons & Trewin* and *E. E. Reed,* for appellant.

*C. W. Meek,* for appellee (withdrew before submission).

GRIMM, J.—In May, 1929, the appellee (plaintiff) filed his action at law against the appellant (defendant) to recover $180,000 for royalties under a contract with the appellant's assignor, J. S. Hall. The petition also seeks to recover for alleged profits claimed to be due the appellee from the manufacture of patented pulley blocks and for damages for alleged fraud on the part of the appellant in manufacturing and selling a different pulley block from that described in the appellee's contract with the appellant.

The appellant answered said petition, and also filed a counterclaim, alleging that the appellee's petition was not brought in good faith, but for the purpose of injuring the appellant in its business; that said suit was one of a long series of suits brought by the appellee against the appellant on the same cause of action; that the issues between the appellee and appellant have already been adjudicated by the court; that the appellant is a manufacturing corporation, doing business in various parts of the United States and Canada, largely through advertising, solicitors, and traveling salesmen, and its business depends upon the good will and confidence of the purchasers; and that, by reason of the appellee's suit and his threat to renew said suit and to continue to bring like suits against the appellant, this appellant has suffered and will suffer irreparable injury. Said cross-petition asks that the appellee be restrained from further bringing or prosecuting his action against the appellant upon said same cause of action.

The appellee dismissed his petition, and filed an answer to the counterclaim, denying each and every allegation thereof, and alleging that, by reason of the fraud and deceit practiced by the Hall Manufacturing Company, he had been prevented in his previous attempts from having a fair trial; that, by reason of the alleged fraud of the appellant, the appellee was prevented from discovering the true facts concerning the relationship of the appellee and the appellant; and that the appellant still owes the appellee royalties on his patented device.

Attached to the appellant's cross-petition are 45 exhibits, which are, in the main, petitions of the appellee against the appellant, or appellant's assignor, J. S. Hall, amendments thereto, applications for the production of books and papers, etc.

In order to adequately describe the course of this litigation, it becomes necessary to refer to these pleadings somewhat in detail.

Exhibit 1 is a petition in equity, filed in the Jones County, Iowa, district court in March, 1915, by the plaintiff against the defendant herein. This petition sets out a cause of action on a contract dated January 1, 1909, between J. S. Hall, the appellant's assignor, and the plaintiff herein, which said contract is the basis for the suit brought by the plaintiff herein in May, 1929. Exhibits 2 and 3 are amendments to this petition. Ex-

hibit 4 is an application for the production of books and papers. Exhibits 5, 6, 7 and 8 are amendments.

Shortly after September, 1915, the said cause of action was dismissed by the plaintiff. On September 14, 1917, the plaintiff commenced another action for royalties, damages, and profits, based upon the same cause of action as in the former suit. After the filing of various pleadings and motions, this case was dismissed by the plaintiff. In the meantime, on November 19, 1914, plaintiff brought a suit at law against J. S. Hall, who was then president and managing owner of the Hall Manufacturing Company herein, based upon the same cause of action. Petitions for the production of books and papers were filed, and various amendments were filed; and thereafter the petition was dismissed by the plaintiff.

On November 19, 1914, plaintiff brought a suit in equity against the said J. S. Hall, based upon the same cause of action. This the plaintiff subsequently dismissed.

On February 16, 1915, plaintiff commenced an action in equity against Hall, president of the Hall Manufacturing Company, on the same cause of action. In March of the same year, an amendment was filed. In September, two amendments were filed. In October, the third amendment was filed. Various other pleadings were filed by either side, including an application for the production of books and papers, which was granted. Finally, sometime after May, 1917, the pleadings were perfected, and the cause was about to be tried, when the plaintiff again dismissed his action.

On May 26, 1922, plaintiff brought another suit against the Hall Manufacturing Company, at law. Various amendments were filed, books and papers were presented by the defendant for inspection by the plaintiff, and finally the trial court sustained a motion by the defendant company to strike a portion of the petition as amended. From this an appeal was taken, and this court sustained the lower court. See *Benedict v. Hall,* 201 Iowa 488.

In January, 1927, Benedict filed another amendment, and finally, on March 23, 1928, the trial court, after a full and complete trial, determined the cause in favor of the plaintiff and against the defendant in the sum of $391.51. The defendant

had previously, in open court, offered to confess judgment for $750. This judgment was satisfied and discharged.

Then followed the petition in this case, followed by the defendant's counterclaim and the dismissal of plaintiff's petition. The plaintiff then filed an answer to defendant's counterclaim, and the cause was transferred to equity. The prayer of the counterclaim is for an injunction restraining the plaintiff ''from prosecuting the cause of action now pending * * * based upon the same cause of action set out in the cause submitted to this court and decided on March 23, 1928.'' As previously stated, the trial court denied the injunction, and the defendant appeals.

The appellee has filed an amended abstract, but has filed no argument. It is claimed that, during this long continued litigation, all of which has its foundation in a contract dated January 1, 1909, approximately 50 lawyers have been employed, more than 40 of whom have appeared of record in the various actions. This litigation has been pending in its various forms for more than 16 years. It was started in Jones County, Iowa, and unless checked, bids fair to rival the now internationally famous Jones County Calf Case.

While the plaintiff has no petition on file at this time, at least so far as this record shows, nevertheless it clearly appears that it is the purpose and intention of the plaintiff to bring another suit or suits against the defendant upon the same old cause of action.

The defendant is a manufacturing corporation, doing a business approximating one-half million dollars a year. Its business success depends largely upon the good will of its customers and the confidence of its business associates. It is without contradiction in the record that the bringing of suits for large amounts of money, as in this case, for $180,000, very seriously impairs the credit of corporations, and that this suit has impaired the appellant's credit to such an extent that it has at various times been unable to buy as advantageously in the market, as if not harassed by this lawsuit; that the appellant has, by reason of this litigation, been unable to buy the quantity of materials it could otherwise buy; and that the fact of the pending litigation has given to the appellant's competitors an argument that has been presented to the appellant's customers, seriously interfering with the appellant's business.

It clearly appears that there is no adequate and complete legal remedy available to the defendant for the loss of confidence and resulting loss of trade to the defendant's business. The business of the defendant is carried on in a large territory, and it is practically impossible for the defendant to meet the arguments of competitors based upon pending litigation, and otherwise protect against the effect of the litigation. The testimony shows that customers are frightened by this litigation, because they fear the concern is in failing financial condition, and that, consequently, the defendant's guaranty will not long continue good, and, moreover, that replacements will be hard to obtain if the defendant is thrown into bankruptcy.

The record abounds in testimony in reference to the manner in which the defendant company has been harassed in its business transactions, both with its banks, with its wholesale creditors, and with its customers, both wholesale and retail. It very plainly appears that there is no way in which the defendant can be properly and adequately compensated in law for these large and wide-flung damages, and that, if the defendant is to have justice in the premises, it must come by way of equitable relief. The mere fact that the adjudication of 1928 may be pleaded to any subsequent action is not a sufficient answer. The wholesale creditors, the bankers, and all of the defendant's customers, wholesale and retail, cannot be made to understand that a suit for $180,000 damages may be completely met by a plea of former adjudication. To them, the suit for $180,000 is a real, vital threat to the financial responsibility of the defendant and to the prospects of its continuing successfully in business. On this account, the defendant has already lost large sums of money, and if the plaintiff is permitted to continue this litigation, as he threatens to do, it very clearly appears that the defendant will suffer other and additional amounts. It must be borne in mind that there is no essential difference between these various suits which have already been brought, and which have been, from time to time, dismissed by the plaintiff, and they are all essentially similar to the suit which was finally determined by the district court of Linn County, Iowa, in 1928.

We think it clearly appears from the record in this case that much of this litigation has been brought in bad faith, and that any subsequent litigation which may be brought by the

plaintiff against the defendant, such as he threatens to bring, based upon the same cause of action, will be brought in bad faith. There is not even an attempt on the part of the plaintiff to explain or excuse this multiplicity of suits on the same cause of action. True, he claims that he has not been successful in his suits because of alleged fraud on the part of the defendant company and on the part of J. S. Hall, now deceased, former president and general manager of the Hall Manufacturing Company. The courts have been open to the plaintiff at all times during these 16 years. He has had his day in court. He has himself voluntarily dismissed several petitions, each based on the same cause of action, and finally he has had an adjudication in his favor by the judgment of March 23, 1928. From this judgment there was no appeal, and the judgment has been paid. He still threatens to bring another or other suits of the same kind, based upon the same cause of action; and it clearly appears that, unless he is enjoined, he will do so, to the great and irreparable injury of the defendant.

The prayer for an injunction contained in the defendant's cross-bill has been known in some jurisdictions as a bill of peace. In 2 Story's Equity Jurisprudence (14th Ed.), Section 1179, there appears the following text:

"Another class of cases to which bills of peace are now ordinarily applied, is where the plaintiff has after repeated and satisfactory trials established his right at law, and yet is in danger of further litigation and obstruction to his right from new attempts to controvert it. Under such circumstances Courts of Equity will interfere and grant a perpetual injunction to quiet the possession of the plaintiff and to suppress future litigation of the right."

In 4 Pomeroy's Equity Jurisprudence (4th Ed.), Section 1371, there is found the following:

"There are, however, special circumstances in which a resort to the injunctive jurisdiction may still be necessary, in order to prevent a failure of justice. * * * In short, the jurisdiction must sometimes be exercised to prevent a multiplicity of actions, or partial investigations which would work injustice."

A very few of the earlier cases in this state seem somewhat

out of harmony with this doctrine, but, upon close examination, it will be found that the said cases turned on peculiar facts.

In *Gray v. Coan,* 36 Iowa 296, the defendant was shown to have had a good defense at law, and there was no claim made of equitable reasons why the plaintiff should be enjoined. There was neither allegation nor proof that the remedy available to the defendant at law was not plain, speedy, and adequate. In other words, there was no claim or proof that further litigation would result in damages to the defendant of an irreparable character, notwithstanding that he had a complete defense to the action.

In *Patterson & Co. v. Seaton,* 64 Iowa 115, upon the particular facts in that particular case, the court found that the litigation was not vexatious, in the sense of the term as applied to actions without merit, or brought to harass and vex the defendant therein.

In *Jones v. Hughes,* 156 Iowa 684, the real question was whether the court, sitting in equity in this state, may, in a suit brought by a citizen of this state against another citizen of this state, enjoin the prosecution in another state of an action to recover damages for wrongs committed in this state. This clearly is distinguishable from the right of a court to enjoin vexatious litigations.

In *Wabash R. Co. v. Peterson,* 187 Iowa 1331, this court laid down a rule for which the defendant in this case contends. We quote from the opinion:

"* * * there is no escaping from the conclusion that, on the facts at bar, the suit is an instance of vexatious litigation, such as is condemned by the quite general consensus of authority. See 2 Story's Equity Jurisprudence (13th Ed.), Section 901; 14 R. C. L., Section 109 (p. 408). Apparently, *Gray v. Coan,* 36 Iowa 296, runs counter to the weight of authority. But on analysis, the case turns on the proposition that one who is pursued with repetition of suits has an adequate remedy at law, because he may plead the earlier adjudications in bar. Whatever may be thought of the soundness of this reasoning, the decision is not in conflict with the cases that permit an injunction to restrain vexatious litigation in cases where there is not the remedy at law asserted in the *Gray* case. It suffices to say that

there is no remedy for the needless expenditure [of money] the prosecution of the suit will force upon the defendant.''

In *Moore v. Harkins,* 179 N. C. 167 (101 S. E. 564), this question was before the court. We quote from the decision, as follows:

''We are of the opinion that the action of his Honor in enjoining the plaintiff from prosecuting further actions on the same cause of action was warranted by the facts. The remedy of a bill of peace to prevent vexatious litigation was well known at the common law. As a rule, the remedy has not been sought very often in this State, but the right to ask for it is well established, and it may be invoked in the pending action, and a new action for that purpose is not necessary under our method of procedure.''

In *Shevalier v. Stephenson,* 92 Neb. 675 (139 N. W. 233), the court said, upon a case very similar to the one at bar:

''We must therefore consider that the plaintiff dismissed her cases voluntarily, and without any ground for so doing except to serve her own purposes. Under such circumstances, the plaintiff would be required to produce evidence to convince a court of equity that she was attempting in good faith to procure a fair trial upon the merits of her claim.''

As previously stated, the plaintiff, in this case at bar, has failed to make any satisfactory showing to convince a court of equity that he was attempting in good faith to procure a fair trial upon the merits of his claim.

In *Foltz v. St. Louis S. F. R. Co.,* 8 C. C. A. 635 (60 Fed. 316), which was an action to enjoin an action for ejectment, the court said:

''In *Preteca v. Land Grant Co.,* 4 U. S. App. 327, 330, 1 C. C. A. 607, 50 Fed. 674, Judge Caldwell, in delivering the opinion of this court, said: 'It may be true that the plaintiff had a remedy at law, but ''it is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.'' ' *Boyce's Ex'rs. v. Grundy,* 3 Pet. 210, 215; *Oelrichs v. Spain,* 15 Wall. 211, 228.''

In *Haines v. Trueblood,* 67 Ind. App. 456 (119 N. E. 383), the court said, among other things:

"As we have said, appellant and the other landowners involved have a remedy at law by reason of the statutory right to remonstrate. However, 'it is not enough to defeat injunction that there is a remedy at law. It must be as plain, complete, and adequate—or, in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity.' *Meyer v. Town of Booneville* (1903), 162 Ind. 165, 70 N. E. 146. * * * In determining the adequacy of legal remedies and the consequent superiority of equitable remedies, some force is given to the fact, if it exists, that the former are vexatiously inconvenient, or that a denial of the latter results in irritation, annoyance, and embarrassment readily relieved by the application of such remedy. 10 R. C. L. 278; *Fitzmaurice v. Mosier* (1888), 116 Ind. 363, 16 N. E. 175, 19 N. E. 180, 9 Am. St. 854. 'In cases where the oppressive character of the litigation involved throws upon the plaintiff an unusual and unconscionable expense and annoyance, equity has jurisdiction to remove a cloud upon his title, notwithstanding a remedy exists at law.' *Town of Corinth v. Locke* (1890), 62 Vt. 411, 20 Atl. 809, 11 L. R. A. 207. Likewise equity may frequently be invoked to prevent a multiplicity of suits (*Royer v. State ex rel.* [1916], 63 Ind. App. 123, 112 N. E. 122, 113 N. E. 312), or for the purpose of suppressing litigation when otherwise there would be actions at law unnecessarily or burdensomely numerous. *Lewis v. Rough* (1866), 26 Ind. 398."

Numerous other authorities might be cited. As has frequently been stated in the decisions, this power of the equity court will only be exercised with great caution, and only for very substantial reasons. We think the appellant has brought itself clearly within the rule. The history of this litigation presents a novel situation. There is in the record no satisfactory excuse for the bringing and dismissing of so many suits. The whole proceeding smacks very strongly of bad faith on the part of the plaintiff. The threat of the plaintiff to bring another or other suits upon the same cause of action, notwithstanding a former adjudication, and notwithstanding the numerous suits

already filed and dismissed by the plaintiff, shows bad faith on the part of the plaintiff.

Upon the facts in this particular case, we think the defendant is entitled to the injunction asked in the prayer of the cross-petition, and the cause is accordingly remanded to the trial court for an injunction in harmony with this opinion.— *Reversed.*

FAVILLE, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.