# UNION TRUST COMPANY OF INDIANAPOLIS, TRUSTEE, *v.* CURTIS, RECEIVER, ET AL.

[No. 22,426. Filed July 13, 1917. Rehearing denied October 1, 1917.]

1. APPEAL.—*Remand.—Mandate.—Enforcement.—Jurisdiction.*— Where a cause has been remanded, the Supreme Court retains jurisdiction thereof for the purpose of enforcing its mandate. p. 524.

2. APPEAL.—*Remand.—Discretion of Trial Court.*—Where a cause has been remanded, the trial court has no discretion, but is bound to apply the mandate of the Supreme Court so far as the rights of the parties have been determined on the appeal. pp. 524, 525.

3. APPEAL.—*Remand.—Mandate.—Construction.*—On a remand of a cause, when the Supreme Court's mandate, which is the

trial court's guide, is open to construction, it must be found in the accompanying opinion and in the reasoning stated therein, and the trial court, if doubt still remains, should apply to the Supreme Court for further explanation or direction; and no part of the opinion should be regarded as *dictum* having no bearing on the mandate.  p. 524.

4.   APPEAL.—*Mandate.*—*Construction.*—*Sale of Railroad.*—*Conditions.*—Where, in a receivership proceeding, the trial court decreed the sale of an insolvent railroad subject to the condition that the operation of the road as a steam railway be continued, and, on appeal, the Supreme Court ordered that the decree be freed of such condition as obstructive to the execution thereof, it was not a compliance with the appellate tribunal's mandate to substitute a condition of sale that the purchaser should operate the line "as a common carrier, either as a steam, electrical or other motive power road," the court's opinion having clearly indicated that the requirement as to operation, and not as to motive power, was the obstruction to be removed.  p. 525.

5.   RECEIVERS.—*Railroads.*—*Insolvency.*—*Continuation of Operation.*—Where a receiver is appointed for a railroad, which has become insolvent because of unprofitable operation, it is the duty of the court to dispose of the assets for the benefit of the creditors, and it has no power to operate the road where such action would result in further loss, and the fact that communities through which the railway passes contributed for its construction and equipment does not entitle the contributors to demand that the road be operated at the expense of those holding liens on the property.  p. 527.

Proceedings on the petition of the Union Trust Company of Indianapolis, trustee, to the Supreme Court in the action by that company against John C. Curtis, receiver, and others for a writ of mandate to compel Samuel E. Cook, as judge of the Huntington Circuit Court, to comply with the mandate of the Supreme Court in that cause.  *Matter continued.*

*Charles N. Thompson, Addison C. Harris, Frank B. Jaqua* and *Henley & Joseph,* for appellant.

*Watkins & Butler, Bowers & Feightner* and *Lesh & Lesh,* for appellee.

HARVEY, J.—The above action was decided by this court in 1914; the opinion appears in *Union Trust Com-*

*pany* v. *Curtis* (1914), 182 Ind. 61, 105 N. E. 562, L. R. A. 1915 A 699. By that appeal was presented the action of the circuit court of Huntington county in reference to granting the prayer of the Union Trust Company that certain restrictions be removed from the original decree of sale entered in said cause, and that the property in the receiver's possession be sold, the receivership wound up, and that the trust be closed. To use the language of said opinion, "in short, the action was to set aside and remove the obstructions preventing a sale of the property, and to enforce the decree of sale, and to wind up the receivership, which was being carried on at a great loss, and to close the trust with due speed." Between the date of the decree of foreclosure in 1910 and the date of the filing of said action to so free the decree and require a sale of the property, a period of two years, the indebtedness resulting from the operation of the road by the receiver had been increased by approximately $100,000. The ruling of the circuit court was reversed, and direction entered that "the trial court free its decree of sale of the conditions herein determined to be obstructive of the execution of it, and to proceed to carry it into effect."

Complying with said mandate, the circuit court struck from its decree the requirement that the property should not be sold for less than an upset price of $800,000 and the requirement that the purchaser should maintain shops at Huntington and maintain and operate the road from Portland to Huntington as a steam road.

The Union Trust Company, appellant in said cause, filed in June of this year in this court, in said cause, a petition wherein it alleged, in substance, that though several attempts have been made to sell the property, nothing of any benefit to creditors has been accomplished. The petition further alleges that, notwithstanding said mandate, the judge of said circuit court

has continuously entertained, and does now entertain, the opinion that said railroad should be extended and should be operated by the receiver and under the supervision of the court; and in accord with said opinion, at the September term, 1916, of said court, said judge caused to be entered an order, in effect, that whereas large sums had been paid by townships in Huntington, Jay and Wells counties in aid of the construction of said road, and large sums had been invested in mills, factories and elevators along the line of said road, a discontinuance of the operation of said road would result in great inconvenience to said public and said business enterprises dependent upon the said road; and said road should be operated and continued, either as a "steam, electrical, or other motive power railroad," and that "therefore, the order of sale heretofore made herein is amended so as to require the purchaser, or purchasers, of said railroad to give sufficient assurance and a sufficient bond, in such a sum as may hereafter be determined, conditioned that such purchaser, or purchasers, will operate and continue to operate said road as a common carrier, either as a steam, electrical, or other motive power railroad; and that the purchaser, or purchasers, thereof shall agree that said bond shall inure to the benefit of said Huntington township, and other townships, and that said townships shall have the right to sue on said bond and enforce the conditions thereof in the event of a breach of said conditions." That on the day following the entry of said order, which order was made in anticipation of such sale, bids were received, one of $80,000, subject to the terms above last mentioned, one of $81,000, and another of $81,500, neither of the latter being, as expressly stated therein, subject to the obligation to operate said road. The petition further states that because of the opinion of said court, so recited in the record, that if said sale is con-

tinued the property can be sold to some party for a better price and to one who will agree to operate it as a railroad and a common carrier, the sale herein was continued until January 8, 1917, and the receiver was ordered to "re-advertise said property for sale * * * on the terms and conditions of the orders herein." That on January 8, 1917, one bid was received of $126,100, accompanied by a certified check - for $20,000, payable to the receiver, which bid offered to pay the balance in cash upon delivery of title, provided said money was applied to the payment of delinquent taxes, and said bid expressly stated that the bidder did not agree to operate said road, nor give bond so to do. A second bid was at said time received of $125,000, of which $5,000 was proposed to be paid in cash, and the remainder in one year, title to be clear of taxes, liens and other claims; said bid further proposed to deposit $475,000 of the common stock of a new company, to be distributed among the creditors of the old company, the bidder agreeing that said road should be extended and operated and the receiver to retain possession until final payment. It is not alleged or shown that any creditor had agreed to accept any part of the proposed common stock on account of its claim. The latter bid was accepted by the receiver and approved by the court, though no guaranty of any kind accompanied the same, nor has any been given as required by said last quoted order. The petition shows that said advance payment of $5,000 was not made, but in April, 1917, the court approved a contract between the receiver and the bidder by which the operation and control of the road was turned over to said bidder until the further order of the court, without any security for performance; and the purchaser agreed to use the surplus earnings and his own funds to place the equipment in condition for operation, and to discharge all operating expenses.

That in lieu of said cash payment of $5,000, the purchaser would advance such sums as in his judgment were necessary to rehabilitate the track, rolling stock and other property, the purchaser to be subject to the order of and removal by the court when, by said court, it might be deemed expedient, the title to remain in the receiver until the full purchase price was paid. The petition alleges that the purchaser is now in possession of said property; that the indebtedness ·chargeable against said property has increased during the nine years since the receiver was appointed, approximately, $267,815; and that over $170,000 of said increase has accrued since the Union Trust Company sued to remove the obstructions from the decree of sale; that no taxes have been paid since the receiver was appointed; and the tax liens now aggregate over $80,000; that during said time all of the property of the road has greatly depreciated in value; that the Public Service Commission has condemned the passenger cars of said road; and that three cars using gasoline as a motive power have been purchased, which cars, as papers filed herein show, have not been paid for and are subject to lien. A writ of mandate is prayed compelling Samuel E. Cook, judge of said circuit court during all of said time, to comply with the mandate of this court in said cause.

In answer to an order to show cause, said Samuel E. Cook, respondent, alleges: That the only issue before the court on the appeal, herein described, was whether the circuit court erred in refusing: (1) to remove from its decree of sale the upset price of $800,000; (2) to remove the requirement that said road be operated by steam power; and (3) in deferring the marshalling of priorities among claimants; and that "this disposed of all the issues before the court, and none other was or could be decided." The answer alleges that the court did comply with said mandate in every detail, spread of

record an order to that effect, and ordered that a deposit of $15,000 be required of all bidders. That thereafter the said property was, in September, 1914, sold to one Dolph for $350,000, of which $2,500 was to be in cash, and the balance was to be paid in four months; that the time for payment was extended from time to time by the consent of the petitioner, and that in April, 1916, said Dolph having failed to make further payments, the sale was set aside; that in June, 1916, the property was again sold, free of said restrictions, to said Dolph for $350,000, of which $5,000 was to be paid in cash, and $2,000 was to be paid monthly until January, 1917, when the balance was to be paid; that said Dolph failed to make further payments and the sale was set aside. That said property was again advertised for sale on January 8, 1917, under an amended order, which is in the answer and in the petition set out, and which is recited above. That the reason for reinserting in the order of sale the requirement that the purchaser agree to give bond to operate said road was the expressed purpose of some proposed bidders to junk and dismantle said road, and that at said sale the bids above described of $125,000 and $126,000, respectively, were received. That the court deemed the bid of $125,000 the highest and best bid, and the contract was entered into, as described in said petition. The answer then describes the extent of the road; states the names of cities, towns and villages through which it passes; alleges that the territory between Bluffton and Portland has no other railroad service; alleges that large sums are invested in mills, factories and other industrial enterprises, which are entirely dependent upon said road for shipping facilities. That said road was built largely by subsidies contributed by said communities, and the public has a vested interest in the operation of the road; that the defendant believed, and still .

believes, that said property can be maintained as a common carrier, if the discretion of the circuit court is not interfered with.

A second paragraph of answer is filed which is not materially different from the first, except that it alleges ' that the present purchaser has not paid the amount of $5,000 cash named in his bid, but in lieu thereof the supplemental contract of April, 1917, was made, and the purchaser has expended of his own money over $3,000 in improving said property, and has now brought said property to a self-supporting basis, and that all current expenses of operation are being paid, and that the indebtedness on that account is not being increased; that sufficient time has not elapsed to demonstrate whether said purchaser can profitably operate said road, but respondent believes he will be able to do so, if given further time. That the public interest, and the interests of the government, at this critical time, require the maintenance of the road, and that the interests of the government are paramount to those who desire the property sold for junking purposes. Said answer further states that the only creditors who would receive any portion of the purchase money under the rejected bids would be the public, and the interested representatives of the public are not demanding a sale for junk, but are urging respondent not to permit the property to be destroyed. The answer further alleges that respondent has not at any time, and does not now, intend to ignore the mandate of this court, but, on the contrary, has in good faith sought to comply therewith.

Upon the averments of the petition and the answers, this matter is submitted to the court for its decision. There is no denial of any material fact. The chief disagreement between the parties being in the asserted

belief as to the outcome of further efforts to operate the road.

That this court retains jurisdiction of the original cause for the purpose of effectuating its mandate 1. is not questioned. The jurisdiction to enforce its mandate is amply supported by authority. *Center Tp.* v. *Board* (1887), 110 Ind. 579, 10 N. E. 291, and cases cited.

In argument it is asserted that the circuit court has a broad discretion as to its dealings with property in its custody, and this discretion is not subject to con- 2. trol by this court. This position is correct, except in so far as this court on appeal has determined the rights of parties as to the course to be pursued in respect to property involved, and has by its judgment and mandate abridged the discretion of the circuit court. Within the terms of the mandate, the circuit court thereafter has no discretion, in fact, no power to do other than as indicated in the mandate. *Julian* v. *Beal* (1870), 34 Ind. 371; *Dodge* v. *Gaylord* (1876), 53 Ind. 365; *Center Tp.* v. *Board, supra; Cutsinger* v. *Nebeker* (1877), 58 Ind. 401; *Sibbald* v. *United States* (1838), 12 Pet. 488, 9 L. Ed. 1167; *Texas, etc., R. Co.* v. *Anderson* (1892), 149 U. S. 237, 13 Sup. Ct. 843, 37 L. Ed. 717.

It is claimed that the mandate is to be strictly construed in favor of the jurisdiction of the circuit court, and therefore the mandate in this case, which 3. reads as above quoted, is limited to the removal of the requirements above mentioned, and that the circuit court's discretion is not otherwise hampered. It is true that the mandate is the circuit court's guide. When this guide is open to construction, such construction must be found in the accompanying opinion and in the reasoning of the court, therein stated, leading to such opinion. If doubt still remain, the circuit court

has no right to resolve the doubt except by application to the Supreme Court for further explanation, or direction; and it is not for the circuit court to answer that this court's opinion is in any part *dictum* and of no bearing on its mandate. *West* v. *Brashear* (1840), 14 Pet. 51, 10 L. Ed. 350.

2. All matters of discretion directly or indirectly involved in the mandate are withdrawn from the jurisdiction of the circuit court. *Gaines* v. *Caldwell* (1892), 13 Sup. Ct. 611, 148 U. S. 228, 37 L. Ed. 432.

4. Following these guides we find the mandate herein specific in the two particulars mentioned and specific also in the third particular, though expressed in general language, that the court shall proceed to carry its decree of sale into effect. The circuit court understood and complied with the mandate as to said two items, in that it struck from its decree the upset price and the provision that the purchaser should take subject to said contract, which included the operation of said railroad by steam power. Thereafter the court again, as above stated, made an order as a part of its decree of sale that the purchaser shall give bond in a sum to be determined, conditioned for the operation of the road, "as a common carrier, either as a steam, electrical or other motive power road." The only argument advanced in support of the circuit court's position—that this is not contrary to the mandate—is that the purchaser is free to use electric, or other motive power, and is not bound to use steam power, as originally ordered.

We cannot agree that this is a compliance with the court's order. The gist of the mandate is to remove obstructions from the decree and to carry it into effect. Its meaning is made clear by the court's opinion, and the basis of the mandate and opinion—to wit, obstruc-

tions—applies equally to the requirement of operation by electric, or other motive power. The requirement of operation is the obstruction, and the motive power is a secondary consideration. The opinion says: "Unless the road could be rescued from its condition of insolvency and profitlessness, such a condition as the court attached to the sale in this case would be a useless, as well as an obstructive one. Self interest would doubtless keep the road in operation if it could be done profitably." Furthermore, the opinion states: "It has been held that in circumstances similar to those in which this railroad has fallen, the owner cannot be compelled to operate it at an actual loss. The duty of a railroad company to operate its road being deemed to be measured merely to meet the public wants and exigencies; and if there is not sufficient traffic over a particular line of road to pay for the expense of running trains, this is sufficient evidence that the public does not require it to be kept in operation." No change in the condition of the road for the better in this respect has been shown. In fact, conditions have continuously grown more unfavorable, and if it were conceded that the circuit court still had power to pass judgment as to whether the road should be operated at all, less support exists now for its operation than existed at the time of the original decree.

The answers herein ignore, or treat as meaningless, the general order in the mandate requiring the court "to proceed to carry it (order of sale) into effect." The answers show clearly that the circuit court regards the interests of the community through which the road passes as more worthy of consideration and protection than the interests of any other parties concerned and the facts indicate a determination of the court, for this reason, to keep the road in operation, regardless of the consequences to others; and with this in mind the court

accepts a lesser bid than a cash offer; does not require a deposit of $15,000 as ordered; does not require the cash offer of $5,000 to be paid; does not require a bond, as ordered, to be given by the proposed purchaser, conditioned for the operation of the road; and, in effect, takes possession of the property from the receiver, who has given bond to care for the same, and turns it over to this purchaser, who, so far as is shown, has violated every agreement made with the court, and in so doing seems to have the sanction of the court. So it would seem that the court not only has expressly reinserted an obstruction in the decree, but, by its conduct, has encouraged purchasers who have no financial strength whatever, so far as appears herein, to bid for this property as against others who are willing to pay cash therefor, the idea of the court, above all things, being that such purchasers will operate the road; and it seems to have become quite apparent that only purchasers of such financial weakness would so obligate themselves.

We are loath to believe that the circuit court or the people of the community needing the service of this road, after full and fair-minded consideration of 5. the situation, have come to such conclusion—that their rights are the only rights to be considered —being, as they are, persons of enlightened intelligence and disposed to be just toward those with whom they are commercially or otherwise associated; and they must recognize the truth of the statement in this court's original opinion to the effect that the right to demand the operation of the railroad is measured by the needs of the public, and if such needs are not so great as to pay the charges to which the company is subjected and such road becomes insolvent, the duty to the public or the community served does not require that it be kept in operation. If as a result a receiver is appointed, it is the duty of the court appointing to dispose of the

assets for the benefit of creditors, and for this purpose to operate the road only as long as necessary to a fair acquaintance with conditions, and so long as the rights and interests of all can be thereby conserved. The court has no power or right to operate at the expense of a part for the benefit of others interested. A sale furnishes an opportunity for any of the public that believes that the road can be made to pay to purchase it, and thus incidentally or directly benefit the community needing its service. The community may organize, or convince others of the propriety of organization, and thus furnish a purchaser who will endeavor to operate and who will compete in bidding with those who desire to buy only for other purposes. It cannot be reasonably said, or claimed, that such community is entitled to have the road operated at the expense of others who have no interest therein other than the return of the money they advanced on the agreement that the same should be repaid, on security by lien on the property. Nor, does the fact that the contributions are made for construction and equipment of the road entitle contributors to demand the operation at a loss to others. They knew the enterprise to be subject to the usual contingencies and risks of such commercial efforts, and did not, as they might, require an agreement for repayment or a lien on the company's property. They believed those needing such service would furnish sufficient business to justify continued operation, and they have a right to see that the road is bought in by those who still so believe, but they cannot justly ask others to allow their present claims to be destroyed by further operation for the benefit of contributors.

The respondent in his answer suggests the need of this road for the use of the government at this critical time. We apprehend that the government would not take over and operate this road without undertaking

to put it into operating condition; and the government has not seen fit to apply to the circuit court, nor to this court, for any such purpose; and until the government does make such application, no question is presented as to whether the government's needs are an excuse for a violation of this court's order.

The mandate of this court, based upon considerations stated in the original opinion, and herein stated, has not been obeyed. Believing, however, that when further consideration is given to the facts supporting the mandate, the same will, in the light of the explanation and construction thereof in said opinion and herein made, be executed, with a desire and disposition to carry the same out in its true intent and spirit, rather than to hinder the execution thereof, this court, being inclined to treat as mistaken rather than intentional the failure to execute said mandate, and with a desire to furnish a final opportunity to all interested in preparation for bidding, now continues this matter until October 1, 1917, and directs the respondent at or before such time to show to this court by full statement of the acts and doings of the court in this behalf, that said mandate has been, or is being, executed in its broad and true sense, and this matter is continued until the date last above fixed.

NOTE.—Reported in 116 N. E. 916. Jurisdiction of an appellate court after remand, 11 Ann. Cas. 865; Ann. Cas. 1917 A 284; 3 Cyc 490; 4 C. J. 1243. See under (2) 3 Cyc 481; 4 C. J. 1221; (3) 3 Cyc 491; (5) 34 Cyc 318.