STATE OF INDIANA ON THE RELATION OF ZARKO SEKEREZ *v.* LAKE SUPERIOR COURT, ROOM 4, AND JAMES T. MOODY, AS JUDGE THEREOF.

[No. 275S50. Filed October 16, 1975.]

*Zarko Sekerez,* of Merrillville, for relator.

*Jackie L. Shropshire,* of Gary, *Kenneth D. Reed,* of Hammond, for respondents.

HUNTER, J.*—The General Assembly has granted the citizens of Indiana standing either as citizens or taxpayers of municipal corporations[1] to challenge:

> ". . . the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of any public improvement by any municipal corporation * * * including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leasing. . . ."[2]

The legislative intent in permitting any citizen of a local community to test the need for and the extent of proposed improvements is founded on the singular hope that such actions will bring to light—prior to construction—any facts which would render the project unnecessary or improper. The desirability of discovering such problems prior to construction lies in the power of the court to enjoin or order appropriate modification of the proposed plans, thereby preventing the squandering away of the community's limited fiscal resources. It follows that a citizen who brings a public lawsuit does so on behalf of all fellow citizens,[3] for it is to their benefit which any judgment shall accrue. Thus, the Public Lawsuit Statute does not provide a new vehicle for disgruntled bidders, *Gariup* v. *Stern,* (1970) 254 Ind. 563, 261 N.E.2d 578, or landowners seeking to vindicate their own property interests, *City of Elkhart* v. *Curtis Realty Co.,* (1970) 253 Ind. 619, 256 N.E.2d 384. In short, the act which authorizes public lawsuits ". . . shall not be construed to broaden any right of action as is now validly limited by applicable law."[4]

---

* This case transferred and assigned to this office September 9, 1975.
1. Ind. Code § 34-4-17-3, Burns § 3-3303 (Code Ed.).
2. Ind. Code § 34-4-17-1(b), Burns § 3-3301(b) (Code Ed.).
3. Ind. Code § 34-4-17-3, Burns § 3-3303 (Code Ed.).
4. Ind. Code § 34-4-17-1(b), Burns § 3-3301(b) (Code Ed.).

The grant of standing to one who has no legal injury in fact is not without its downside risks. The General Assembly was aware that Machiavelians—who would use the public lawsuit machinery to serve these ends while purportedly suing on behalf of their fellow citizens—live in Utopian communities. The General Assembly was also aware that those with pure hearts but empty heads might bring such lawsuits, although not in the public interest. To protect the citizens of the community against these hazards, the legislature provided:

"At any time prior to the final hearing in a public lawsuit, the defendant may petition for an order of the court that the cause be dismissed unless the plaintiff shall post a bond with surety to be approved by the court payable to defendant for the payment of all damages and costs which may accrue by reason of the filing of the lawsuit in the event the defendant prevails. A hearing shall be had on such petition in the same manner as the hearing on temporary injunctions under IC 1971, 34-1 (formerly Acts 1881 (Spec. Sess.), ch. 38). *If at the hearing the court determines that the plaintiff cannot establish facts which would entitle him to a temporary injunction, the court shall set the amount of bond to be filed by the plaintiff in an amount found by the judge to cover all damage and costs which may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails.* In the event such bond is not filed by the plaintiff with sureties approved by the court within ten [10] days after such order is entered the suit shall be dismissed. Either plaintiff or defendant may appeal such order to the Indiana Supreme Court within such ten [10] day period by notice of appeal and a statement of error in the same manner as is provided in a petition for mandate or prohibition. The Supreme Court may stay the lower court order pending its own decision, may set a bond to be filed by the plaintiff in connection therewith, may modify the order of the lower court, or may enter its order as a final order in a case. *In the event no bond is filed as provided in this section, the public lawsuit shall be dismissed and no court shall have further jurisdiction of the public lawsuit or any other public lawsuit involving any issue which was or could have been raised therein.* Provided, That nothing in this section is intended to create nor shall it be construed as creating, any additional cause of action on the part of any municipal

corporation, person, partnership, or corporation, unless the defendant is required to and does post bond." [Emphasis added.][5]

This protection was invoked against the first two lawsuits commenced by citizen Sekerez. A hearing was held and it was determined that a bond was required to protect the public's interest *pendente lite*. Such decision was subsequently affirmed. *Sekerez* v. *Bd. of San. Comm'rs.*, (1974) Ind. App., 309 N.E.2d 460. When the bond was not filed, the suits were dismissed, as required by the statute. *Sekerez* v. *Bd. of San. Comm'rs.*, *supra*.

When relator instituted his third action, several avenues were open to the Board. First, the Board might have asserted the defense of res judicata before the Lake Circuit Court, based upon the Court of Appeals' decision, *supra*, and relying upon that portion of Ind. Code § 34-4-17-5, Burns § 3-3305 (Code Ed.) which provides, "In the event no bond is filed as provided in this section, the public lawsuit shall be dismissed and *no court shall have further jurisdiction of the public lawsuit or any public lawsuit involving any issue which was or could have been raised therein.*" [Emphasis added.] Secondly, the Board might have petitioned the Court of Appeals for a writ of prohibition restraining the Lake Circuit Court from exercising jurisdiction in disregard of the Court of Appeals' opinion and order affirming the dismissal of appellant's public lawsuits, based upon the inherent powers of an appellate tribunal to see that its orders are effectuated. *See* INDIANA RULES OF APPELLATE PROCEDURE, Ind. R. Ap. P. 15 (M) (6) ; *see, also, Union Trust Co.* v. *Curtis*, (1917) 186 Ind. 516, 116 N.E. 916. Instead, the Board sought and was granted dismissal of relator's third suit under Ind. Code § 19-2-14-10, Burns § 48-4208 (1963 Repl.), a statute which provides remonstrators the right of review of actions of sanitary boards before the superior court of the

5. Ind. Code § 34-4-17-5, Burns § 3-3305 (Code Ed.).

county, and concludes that the ". . . judgment of said court shall be final and conclusive upon all persons whomsoever, and no appeal shall lie from the judgment of said court."

When relator indicated that he would in fact appeal such dismissal, and would institute additional suits, the beleaguered Board invoked the equitable powers of the superior court, to halt the legal treadmill on which the Board was being recycled. It is true that this Court will not ordinarily tolerate an injunction of proceedings in one court by another court of coordinate jurisdiction. Such a rule is founded upon the valid policy basis of preventing unseemly conflicts and an equally valid interest in promoting orderly settlement of disputes. *State ex rel. Miller* v. *Sup. Ct.,* (1965) 246 Ind. 698, 210 N.E.2d 662. The injunction here, however, is not against any court. It runs against an individual who desires to go into court for the purposes of harassment. If an individual disregards an injunction, action is not taken against the court, but rather against the individual. Technically, then, there is no conflict or encroachment of one court upon the jurisdiction of another court.

Assuming *arguendo* that the net effect of such an injunction is to end the power of the second court to hear the suit before it by requiring the litigant to dismiss the action, we do not find the result to be an affront to the jurisdictional integrity of a sister court. On rare occasions a court may exercise its equitable powers to prevent vexatious, oppressive and ruinous litigation. See 42 AM. JUR. 2d § 206 and cases cited therein. According to this annotation, the basis for the exercise of the equitable powers of the court is that ". . . the litigation is for the purpose of harassing, annoying and vexing an opponent, and that the jurisdiction of the court is invoked by the numerous proceedings, not for the attainment of justice but rather to further or satisfy individual malice toward another." In his verified return respondent states, "The evidence showed, and the court found, malice on the part of the defendant-

petitioner." [Verified Return, p. 2.] Under these circumstances, an injunction was entirely proper.

Relief similar to that granted by the trial court herein was denied by the trial court in the case of *Haines* v. *Trueblood*, (1917) 67 Ind. App. 456, 119 N.E. 383. On appeal, such denial was held to be erroneous. Trueblood petitioned for the establishment of a drainage ditch. Under the applicable statute, the petition would be dismissed if more than two-thirds of the affected landowners filed written remonstrances. The required number of landowners remonstrated and the petition was dismissed. Trueblood refiled his petition, and once again remonstrances were gathered and filed. Whenever a petition was dismissed a new one was filed. Faced with this dilemma, remonstrators petitioned for injunctive relief. In holding that the relief should have been granted, the Appellate Court per Caldwell, J., stated:

"Under the allegations of the complaint the requisite number of qualified landowners are opposed to the drainage improvement. They have repeatedly demonstrated their opposition in the statutory manner. They stand ready to continue to do so, if need be. They have thereby established and are ready to continue to establish that the right does not exist in appellees to have the petition here referred. To do so, however, requires in each case much labor and the expenditure of large amounts of money. But appellees declare that they will create in themselves the semblance of a right by compelling the landowners through utter weariness to abstain from filing remonstrances. A petition is filed; it is dismissed by reason of a remonstrance; its practical similitude is at once again filed, followed by another remonstrance, and thus a contest in endurance goes on, the one party seeking to create the equivalent of a right by compelling the other party to forego a right. The one party seeks to create the semblance of a right, not because the natural fruits thereof are desired, but for certain improper purposes, to be attained by improper means exercised in an improper spirit. May such a contest proceed without limitation? Is the arm of equity long and strong enough to intervene?

"As we have said, appellant and the other landowners involved have a remedy at law by reason of the statutory

right to remonstrate. However, 'It is not enough to defeat injunction that there is a remedy at law. It must be as plain, complete, and adequate—or, in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity.' *Meyer* v. *Town of Boonville,* (1903) 162 Ind. 165, 70 N.E. 146.

"As measured by the foregoing limitation, there can be no doubt that in case of the ordinary petition for drainage, the legal remedy by remonstrance is fully adequate, and that on account of the existence of such remedy, if for no other reason, recourse to equity should be denied. Here, however, we are not dealing with an ordinary proceeding for drainage.

"In determining the adequacy of legal remedies and the consequent superiority of equitable remedies, some force is given to the fact, if it exists, that the former are vexatiously inconvenient, or that a denial of the latter results in irritation, annoyance and embarrassment readily relieved by the application of such remedy. 10 R.C.L. 278; *Fitzmaurice* v. *Mosier,* (1888) 116 Ind. 363, 16 N.E. 175, 19 N.E. 180, 9 Am. St. 854.

"'In cases where the oppressive character of the litigation involved throws upon the plaintiff an unusual and unconscionable expense and annoyance, equity has jurisdiction to remove a cloud upon his title, notwithstanding a remedy exists at law.' *Town of Corinth* v. *Locke,* (1890) 62 Vt. 411, 20 Atl. 809, 11 L.R.A. 207.

"Likewise equity may frequently be invoked to prevent a multiplicity of suits (*Royer* v. *State, ex rel.,* [1916] 63 Ind. App. 123, 112 N.E. 122, 113 N.E. 312), or for the purpose of suppressing litigation when otherwise there would be actions at law unnecessarily or burdensomely numerous. *Lewis* v. *Rough,* (1866) 26 Ind. 398.

"These principles seem to be applicable to the situation here. The successive filing of the petition for drainage under the circumstances presented by the complaint, rendering necessary the repeated preparation and filing of remonstrances, unless the landowners abandon a statutory right, and especially in view of the declared purpose to continue the filing of such petition as often as it meets with an enforced dismissal, and until all opposition is destroyed, presents a case of multiplicity in legal procedure at once irritating, annoying and vexatious, and apparently unjustifiably so, in a high degree."

The *Haines* decision, from all that appears in the reports, does not involve injunctive relief against the taking of an appeal. It might be argued that each new petition filed by Trueblood amounted to an appeal from the dismissal of his previous petition, so that the decision in *Haines* factually squares with the case at bar. The applicability of *Haines*, however, does not rest upon semantical play with the word "appeal." The salient principle for which *Haines* stands is the equitable power of the court to enjoin an abuse of process.

The premise of the dissent is that ". . . petitioner's appellate rights were greatly endangered." If relator's right to appeal for the *first* time was at stake, no matter how frivolous the appeal, I would not hesitate to overturn the injunction. But such is not the case before us. Relator might have procured a determination on the merits of his first and second suits by posting the bond which was found to be necessary to protect the public against rising construction costs. For whatever reason, relator failed to post the bond, and the suits were dismissed. The dismissal was affirmed. *Sekerez v. Bd. of San. Comm'rs., supra.* Like Trueblood, relator was undaunted and filed his third suit. When it was dismissed, he threatened to appeal and institute additional suits. When injunctive relief was granted, barring appeal of the dismissal of relator's third suit, it was based upon a finding that the litigation involved the same parties and subject matter as the two previous suits. In granting equitable relief, the trial court must balance the equities. Here, the trial court was called upon to weigh the right of the community to be free from vexatious and unbonded suits against the appellate rights of the relator. It is a long-standing and familiar principle of Indiana law that the propriety of the balance struck by a trial court in granting or denying equitable relief will be reviewed only upon appeal, and not in an original action. There is no doubt that the trial court had jurisdiction to issue the injunction at bar. That jurisdiction is not lost merely because of some chilling effect upon

relator's appellate rights. Any other result in the case at bar would judicially sanction an abuse of process. The temporary writ is dissolved and the permanent writ denied.

Arterburn, J., concurs; Prentice, J., concurs in result; De-Bruler, J., dissents with opinion in which Givan, C.J., concurs.

## DISSENTING OPINION

DeBRULER, J.—Zarko Sekerez, taxpayer and citizen of the Sanitary District of Gary, Indiana, opposing the construction of a new sewage treatment facility within that District, filed two suits before Judge Moody in the Lake Superior Court against the Board of Commissioners of the Sanitary District of Gary seeking to enjoin the project. These suits were dismissed in 1973, pursuant to applicable provisions of the Public Lawsuit Statute (Ind. Code §§ 34-4-17-1 through 34-4-17-8, being Burns §§ 3-3301 through 3-3308) for failure to post a bond. Such dismissal order was affirmed by the Court of Appeals in a 1974 opinion appearing at 309 N.E.2d 460.

In 1974, after the Board had adopted a series of additional declaratory and confirmatory resolutions which are not included in the record but which related to the construction of the same sewage treatment facility which had been the subject of the previous two suits, petitioner Sekerez filed a *third* suit against the same Board—this time in the Lake Circuit Court—seeking to enjoin the same project. On January 16, 1975, the Lake Circuit Court dismissed this suit on the ground that petitioner here, plaintiff there, had not remonstrated against the project before the Board and sought judicial review of the Board's actions as required by Ind. Code § 19-2-14-9, being Burns § 48-4207, Ind. Code § 19-2-14-10, being Burns § 48-4208, and Ind. Code § 34-4-17-8(b), being Burns § 3-3308(b). This ground is wholly different from the ground upon which that court had dismissed the first two suits.

Following the dismissal of the third suit, petitioner indicated that he would appeal the dismissal and institute addi-

tional suits challenging the project. At this juncture, the Board countered with its own suit back in the Lake Superior Court before Judge Moody, seeking to enjoin petitioner from appealing the dismissal and from filing and prosecuting further suits against the same project. It is this Superior Court case which gives rise to this original action. Upon the heels of the Board's Superior Court case, petitioner Sekerez responded by filing in the Lake Circuit Court yet a *fourth* suit seeking to enjoin the same project.

Moving with exceptional briskness in the Board's Superior Court case, the trial judge overruled petitioner's motion to dismiss and motion for change of venue, submitted the case for trial, and, on February 7, 1975, entered his special Findings of Fact and Conclusions of Law. Petitioner was permanently enjoined from prosecuting appeals from the decisions of the Lake Circuit Court in the third *and* fourth suits, the fourth suit having been dismissed by the Lake Circuit Court in the meantime. It is this final, permanent injunction granted by the Lake Superior Court which petitioner contends in this original action was made without jurisdiction, so that this Court should prohibit its enforcement.

The permanent injunction restrained petitioner from doing any of the following acts:

"1. Commencing any litigation against the plaintiffs herein which in any way involves the construction or erection of sanitary sewage facilities in the Sanitary District of Gary, Indiana, as more particularly defined in Gary Sanitary District Resolution Nos. 415, 418 and 424 adopted August 13, 1974, October 22, 1974, and December 27, 1974, respectively;

2. From commencing any litigation involving plaintiffs herein or any proposed buyer of bonds of the Sanitary District which in any way challenges or is designed to prevent the issuance or sale of sanitary district bonds proposed to be sold or sold to finance the aforementioned sanitary sewer facilities in the Sanitary District of Gary, Indiana;

3. From taking any action to appeal the order and judgment of the Lake Circuit Court, entered in that Court's

Cause No. C74-2801 on January 16, 1975, dismissing that cause and the defendant's complaint as plaintiff therein, or from taking any action to appeal the order and judgment entered or to be entered in the Lake Circuit Court, Cause No. C75-271."

On February 26, 1975, we issued a temporary writ prohibiting the Lake Superior Court from exercising further jurisdiction in the case. Since that date, petitioner proceeded with his appeals from the dismissal of the third and fourth cases, and such appeals have been dismissed by the Court of Appeals for failure of petitioner to post a bond set by the Court of Appeals pursuant to the Public Lawsuit Statute.

The Lake Superior Court injunction has two prongs. In paragraphs (1) and (2), it restrains petitioner from instituting new litigation. And, in paragraph (3), it restrains petitioner from appealing the two Circuit Court dismissals. The entire injunction is a final judgment. If the judicial proceedings which culminated in this injunction were jurisdictionally defective, petitioner's legal remedy by way of appeal is adequate, and such defects properly should be raised by appeal rather than by original action. The right of petitioner to appeal from the part of the order contained in paragraphs (1) and (2) is clearly adequate. However, the second prong of the injunction restrains petitioner from taking those procedural steps necessary to appeal from the Circuit Court dismissals. This prohibition is contrary to the Public Lawsuit Statute which specifically grants the right to appeal from such dismissals. Ind. Code § 34-4-17-5, being Burns § 3-3305. Petitioner's right to appeal could have been lost during his appeal of this injunction. Because petitioner's appellate rights were greatly endangered we should consider in this original action whether paragraph (3) of the injunction should be permitted to stand, in spite of the fact that it is part of a final judgment and consequently would be reviewable by way of appeal.

In *Meridith* v. *Crowder,* (1924) 81 Ind. App. 221, 142 N.E. 876, relying on prior Supreme Court cases, the Appellate Court held that, where a judicial proceeding is going forward and the parties have a right to appeal from a final decision made in that proceeding, another court sitting in equity may not enjoin the enforcement of a judicial order. The Court stated:

> "[A] court will not, as a rule, enjoin another tribunal from acting in a matter over which it has jurisdiction, or where there is a right of appeal." 81 Ind. App. at 224.

We held in *State ex rel. Miller et al.* v. *Superior Court of Madison County, No. 2* (1965) 246 Ind. 698, 210 N.E.2d 662, that one court may not infringe upon another court's exercise of its normal jurisdiction and that jurisdictional conflicts between two courts are properly presented to this Court by way of an original action. That case makes it clear that a jurisdictional conflict occurs when the order of one court is nullified by an order of another. In *State ex rel. American Reclamation and Refining Co.* v. *Marion Superior Court, Room 1,* (1971) 256 Ind. 507, 269 N.E.2d 869, a jurisdictional conflict occurred between two courts of the same judicial level, when suits between the same parties and involving the same subject matter were pending at the same time in both courts.

While none of these cases treats the exact situation before us, they are applicable here. At the time the Board filed its suit for injunction in the Superior Court, the Circuit Court had dismissed petitioner's third public lawsuit. The parties were the same in both courts. The Circuit Court case had followed its course and been litigated to a final disposition and judgment. As we understand the above cases, the Board could not have instituted in the Superior Court an action to enjoin the prosecution of the public lawsuit in the Circuit Court while it was defending that lawsuit in that court. Had it done so a conflict between courts of coordinate jurisdiction would have occurred. *State ex rel. American Reclamation and Refining*

*Co.* v. *Marion Superior Court, Room 1, supra; City of Indianapolis* v. *John Clark, Inc.*, (1964) 245 Ind. 628, 196 N.E.2d 896; *State ex rel. City of Indianapolis* v. *Hancock Circuit Court*, (1967) 249 Ind. 377, 231 N.E.2d 32. Such a conflict would be properly resolvable in an original action here. If the Superior Court could not exercise lawful authority in the injunction action while the Circuit Court was considering the public lawsuit, then, for like reason, and in like manner, it had no lawful authority to entertain the injunction action after the Circuit Court made its final judgment in the third public lawsuit.

As pointed out above in the narration of procedural steps, petitioner filed his fourth public lawsuit in the Circuit Court after the Board had filed its injunction suit in the Superior Court. This fourth suit created a second jurisdictional conflict between the two courts. The record shows that the Board ignored this conflict, went into Circuit Court and obtained an order setting bond, before the Superior Court issued the final injunction.

The Superior Court injunction under consideration in this original action was an obstruction of the right to appeal a Circuit Court judgment and to prosecute the fourth case. That obstruction was an interference with the Circuit Court and with appellate tribunals whose jurisdiction might yet have been timely invoked. I would hold that paragraph (3) of the injunction was made without lawful authority, and the temporary writ, insofar as it commands the Lake Superior Court to refrain from enforcing said paragraph (3), should be made permanent. The temporary writ should be dissolved insofar as it commands the Lake Superior Court to refrain from exercising further jurisdiction and from entering further orders in relation to paragraphs (1) and (2).

Givan, C.J., concurs.

NOTE.—Reported at 335 N.E.2d 199.