Marilyn HUBER, Appellant,

v.

**FRANKLIN COUNTY COMMUNITY
SCHOOL CORPORATION BOARD
OF TRUSTEES, Appellee.**

No. 24S01–8704–CV–392.

Supreme Court of Indiana.

May 4, 1987.

Kevin W. Ault, Clarkson Law Offices, Rushville, for appellant.

Lowell C. McMillin, Mullin, McMillin & Rychener, Brookville, for appellee.

SHEPARD, Chief Justice.

This case is the culmination of a two-year-old dispute over the construction of a new high school in Franklin County. Appellant Marilyn Huber was elected to the Franklin County Community School Corporation Board of Trustees after running on the ticket of the Franklin County Taxpayers Association, a group which has mounted consistent opposition to the new school. When Huber's effort to defeat the project in her official capacity failed, she filed this lawsuit in her role as an individual residing in Franklin County. Her complaint questioned thirty-three aspects of the project, including financing, construction and location, and sought an injunction halting progress on it.

The trial court dismissed her lawsuit on the basis of Ind.Code § 34–4–17–5 ("Public Lawsuits—Testing Public Improvements") and enjoined both Huber and other litigants affiliated with the Franklin County Taxpayers' Association from filing further suits "delaying or hindering" the construction and financing of the new school. Huber appealed and both parties sought immediate transfer from the Court of Appeals to this Court pursuant to Appellate Rule 4(A)(10). We granted transfer and now affirm.

The facts are generally undisputed. On December 20, 1984, the Franklin County Community School Corporation Board of Trustees adopted a resolution to construct a new high school. In June 1985, the board approved contracts with a construction manager, an architect, a legal adviser and a financial consultant to direct the project.

Huber and eight other citizens, acting under the name "Franklin County Community School Corporation Taxpayers," filed a remonstrance with the school board, the county auditor and the Indiana State Board of Tax Commissioners on September 19, 1986. The remonstrance questioned the legality, feasibility and cost of the school construction project. Two officers of the Franklin County Taxpayers Association signed that remonstrance.

Construction bids were advertised and received in October 1986. The board's construction manager sought to change the terms of his contract. The school board held an executive session on November 10 to discuss the construction manager's request and proceeded to approve the change during its public meeting that same evening. In his capacity as attorney for the Franklin County Taxpayers Association, Huber's counsel informed the board's attorney that the board's executive session had not complied with the Open Door Law and that any business conducted during both the session and the subsequent public meeting was therefore void. Ind.Code § 5–14–1.5–1 to –7. The board's attorney agreed and advised the board by letter that it should consider anew the contract matter without reference to the illegal meeting.

The board consequently scheduled a special meeting for November 24 to reconsider the contract change and address other matters related to construction. Only hours before that meeting began, the Franklin County Taxpayers Association and its officers filed a suit in Franklin Circuit Court under the Indiana Open Door Law, seeking to render the Board's action on the contract void. The suit also sought to enjoin the board from taking further action on the construction manager's contract and from future conduct violating the Open Door Law. During the special meeting that evening, which apparently complied with the Open Door Law, the construction manager explained his request and the board again approved the change. The board also approved the creation of a separate municipal building corporation which would lease and maintain the new school after the school board constructed it.

On December 8, 1986, the school board conducted a public hearing on the proposed lease. The attorney representing the

Franklin County Taxpayers Association expressed objections, but the board approved the lease. The requisite state agencies approved the project, and the lease was executed on December 15, 1986. Notice of that action occurred on December 17, the same day that the school board filed a petition with the State Board of Tax Commissioners seeking approval of the lease. On January 9, 1987, a remonstrance against the lease was filed with the school board and with the county auditor by four Franklin County residents, including Marilyn Huber. The objections raised in Huber's complaint are largely the same as those raised in the remonstrance.

On January 10, the Franklin Circuit Court conducted a hearing on the Open Door lawsuit which the Taxpayers Association had filed on November 24. Upon the school board's motion, the court declared the case a public lawsuit under Ind. Code §§ 34-4-17-1 to -8.[1] After denying plaintiff's request for a temporary injunction and determining that they were unlikely to succeed on the merits, the trial court ordered the plaintiffs to post a bond of $2,764,800 within ten days in compliance with Ind.Code § 34-4-17-5.[2] The plaintiffs did not post the bond within the ten days. Accordingly, the trial court dismissed the complaint on January 21. The Association did not appeal.

Plans for the new school proceeded. On February 18, the School Property Tax Control Board conducted a hearing on the proposed lease and considered the remonstrances. After obtaining that board's recommendation, the State Board of Tax Commissioners approved the lease on March 2, concluding that it was fair and reasonable.

The School Board then advanced to the next stage of the process—financing. On March 11, it advertised the sale of first mortgage bonds to finance construction of the new high school. Appellant filed this suit in the Franklin Circuit Court on March 17 to enjoin the sale of the bonds, originally scheduled for April 2, 1987.

The school board requested that the trial court declare Huber's action a public lawsuit under Ind.Code § 34-4-17-5 and dismiss it for want of jurisdiction under Ind. Code § 34-4-17-8.[3] After an evidentiary

1. Ind.Code § 34-4-17-1(b) provides:
  "Public lawsuit" shall mean any action whereby the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of any public improvement by any municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leasing, and shall mean any action to declare invalid or enjoin the creation, organization or formation of any municipal corporation. This definition, as used in this act, shall not be construed to broaden any right of action as is now validly limited by applicable law.

2. Ind.Code § 34-4-17-5 provides in relevant part:
  If at the hearing the court determines that the plaintiff cannot establish facts which would entitle him to a temporary injunction, the court shall set the amount of bond to be filed by the plaintiff in an amount found by the judge to cover all damage and costs which may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails. In the event such bond is not filed by the plaintiff with sureties approved by the court within ten (10) days after such order is entered the suit shall be dismissed.

3. The pertinent sections of Ind.Code § 34-4-17-8 state:
  After a public lawsuit is commenced, no other lawsuit relating to the same subject-matter shall be commenced, and no trial court shall have jurisdiction of any such subsequent lawsuit; and no action shall be brought except as provided in this act if it could have been the subject of a public lawsuit. These provisions shall, however, not diminish any right of intervention of any person, or the right of any person to become a named party in the public lawsuit....
  Where as a condition precedent to the construction, financing or leasing of a public improvement the municipal corporation is required to hold a public hearing thereon preceded by public notice thereof, and hearing is held and the notice is given in accordance with applicable law, the plaintiff in a public lawsuit shall not be entitled to raise any issue in the public lawsuit which he could have but did not raise at such hearing; and any matters or issues relating to any procedural matters which were not raised and could have been redone or corrected following such hearing are hereby declared to be irregularities and not jurisdictional to the power of the municipal corporation or its governing body in connection with such construction, financing or leasing.

hearing, the trial court granted the board's requests, prompting this appeal.

The cornerstone of Huber's argument on appeal is that the suit brought by the Franklin County Taxpayers Association under the Open Door Law should not have foreclosed her subsequent action.

■ The Public Lawsuit statute was designed to protect municipalities from "a flood of harrassing litigation which obstructs and delays public improvement." *Barnett v. City of Indianapolis* (1973), 158 Ind.App. 1, 5, 301 N.E.2d 526, 528. The legislature has recognized that even meritless litigation, brought by a vocal minority, can delay public improvements and add millions of dollars in increased construction costs. The statute neither affords new remedies nor confers new rights to bring "public suits"; its goal is to require those attacking governmental decisions to bring their suits as class actions and to put a stop to serial litigation. *Hatcher v. Board of Commissioners of Lake County* (1972), 155 Ind.App. 27, 290 N.E.2d 801.

This Court affirmed the constitutionality of this legislative framework shortly after the General Assembly passed the Public Lawsuit statute:

[U]nder the state law prior to adoption of [34-4-17-1 *et seq.*] a determined plaintiff could keep a suit in being from two to six years; and in many cases the mere filing of the action delayed beyond saving the intricate planning of the project regardless of the merits of the action.

If litigation is filed and a legal opinion cannot be given, bonds will remain unsold or undelivered. If this persists for any project for more than six months to a year, construction contractors in inflationary times cannot stand by their bids, and the project as planned and the litigation opposing it became moot. In the meantime taxpayers, in those cases where the endeavor is legally correct, have suffered substantially by increased construction costs.

*State ex rel. Haberkorn v. DeKalb Circuit Court* (1968), 251 Ind. 283, 289, 241 N.E.2d 62, 66.

For a plaintiff who cannot establish facts which would entitle him to a temporary injunction, the statute's requirement of a bond (Ind.Code § 34-4-17-5) allows the plaintiff to pursue his claim without subjecting the municipal corporation to the damage which a meritless suit would cause. On the other hand, a plaintiff who is able to make a preliminary showing that he has a meritorious claim need not post the bond; he may obtain an injunction prohibiting the municipal corporation from proceeding on a disputed project until the plaintiff's claim is settled. *Vigo County School Corporation v. Crockett* (1974), 159 Ind.App. 420, 307 N.E.2d 510.

With these principles in mind, we turn to the merits of the case before us. Huber cannot now question the trial court's January 1987 determination that the Franklin County Taxpayers Association complaint was a public lawsuit. Aside from the fact that the decision appears to be in accord with *Pepinsky v. Monroe County Council* (1984), Ind., 461 N.E.2d 128, the Taxpayers Association did not appeal and thus the doctrine of *res judicata* bars relitigation of that determination.

■ Furthermore, there is no dispute that Huber's action was also a public lawsuit. Her complaint attacks numerous aspects of the school's construction, financing and leasing, and thus falls squarely within Ind.Code § 34-4-17-1. *See Teperich v. North Judson-San Pierre High School Building Corp.* (1971), 257 Ind. 516, 275 N.E.2d 814, *cert. denied* (1972), 407 U.S. 921, 92 S.Ct. 2462, 32 L.Ed.2d 806. While Huber testified that she brought the suit on her own, the harm alleged in her complaint would be suffered by all taxpayers and the remedy sought would allegedly benefit all of them. Huber has not alleged any particularized harm which would render the Public Lawsuit statute inapplicable. *See Gariup v. Stern* (1970), 254 Ind. 563, 261 N.E.2d 578; *Elkhart v. Curtis Realty Co.* (1970), 253 Ind. 619, 256 N.E.2d 384.

If both suits are public lawsuits within the meaning of Ind.Code § 34-4-17-1, Huber could have avoided dismissal of her complaint if its allegations related to a

different subject matter than the taxpayers' suit or if those allegations could not have been raised within the framework of the taxpayers' suit. Ind.Code § 34–4–17–8.

■ Huber's complaint does not fall within either one of the statutory exceptions. The original trial court ruling that the Taxpayers Association lawsuit concerned the construction of the new school may not now be questioned. Furthermore, the subsequent trial court ruling that the second lawsuit attacked the merits of the school project is obviously correct. Huber can hardly contend that the lawsuits involve different subjects.

In support of her argument that the Open Door Law claim by the Franklin County Taxpayers Association involved a different subject matter than Huber's complaint, Huber cites *Citizens Action Coalition of Indiana, Inc. v. Public Service Commission of Indiana* (1981), Ind.App., 425 N.E.2d 178. She directs us to the following language in that case:

> Because the Open Door Law does not provide for a challenge to the merits of a final decision, ruling or order, original jurisdiction lies with the trial court and not with the Court of Appeals ... (T)he Open Door Law guarantees the public's right to be fully informed. The fact that the Open Door Law provides a remedy by which actions taken in violation of its provisions may be nullified does not make a suit brought under the Open Door Law a collateral attack on those actions. Rather, it is a method by which a public agency's compliance with the law can be assured.

*Id.*, at 181.

Thus, Huber argues that the Open Door Law claim advanced by the Franklin Coun-

ty Taxpayers Association involved only the manner in which the board made a decision concerning the school construction project and, unlike Huber's complaint, could not have attacked the merits of the project. Inasmuch as the trial court found that the Open Door Law claim by the Taxpayers Association *did* question the school project itself and therefore was a public lawsuit, Huber's use of the language in *Citizens Action* is simply a backdoor challenge to the trial court's ruling in the association's case. Moreover, the public lawsuit statute does contemplate attacks on the procedural mechanisms of municipal boards as they make decisions on public improvements. Ind.Code § 34–4–17–1.[4]

■ Equally unavailing is Huber's assertion that the issues presented in the second lawsuit could not have been raised in the first. Huber claims that her complaint, based on Ind.Code § 21–5–11–7, would have been premature under that statute if filed before approval of the lease by the State Board of Tax Commissioners, which occurred more than two months after the dismissal of the Franklin County Taxpayers Association complaint. That statute, which deals with the approval of lease rental agreements between public municipal corporations and their building corporations, provides:

> No action to contest the validity of the lease or to enjoin the performance of any of the terms and conditions of the lease shall be instituted at any time *later* than thirty (30) days after publication of notice of the execution of a lease by the Board of School Trustees (emphasis added).

The statute only sets a deadline for such suits and does not address the earliest time at which they may be filed. The remon-

---

**4.** The Court of Appeals is correct that an action brought strictly under the Open Door Law is designed to address only the procedure by which public officials make decisions of importance to the community and not the correctness of those decisions on the merits. A statute's design, however, may be quite different from its application. For a few isolated plaintiffs, a claim under the Open Door Law may simply be another vehicle for gaining publicity for their opposition to a municipal improvement and for causing further delay of the embattled project.

In this case, the Franklin County Taxpayers Association filed the suit only after the board admitted its mistake and arranged to correct it. Instead of dismissing its suit, the Association continued its efforts to enjoin the board from further action on the construction management contract, which was integral to the project. The trial court, of course, found that the Association's claim, despite its Open Door Law foundation, *did* question the merits of the project; hence, its determination that the Association's complaint was a public lawsuit.

strators could have challenged the lease as part of the first public lawsuit, just as they had before the school board as early as December 1986.

Huber similarly claims that Ind.Code § 34-4-17-8 prevented her from raising the allegations in her complaint while a prior lawsuit—the action by the Taxpayers Association—was pending. That is incorrect because that statute, like Ind.Code § 21-5-11-7, merely prescribes the last date for filing such a claim.

Huber attaches importance to the fact that the lease was not subjected to public hearing or board vote until December 8, two weeks after the Association lawsuit was filed. Huber filed remonstrances on September 19 and more importantly, on January 9; these remonstrances formed the basis of her complaint. It was not until January 10 that the court conducted its first hearing in the taxpayer's case and declared the claim a public lawsuit. Appellee correctly notes that Huber could have intervened in that public lawsuit, as permitted by Ind.Code § 34-4-17-3. She chose not to do so and therefore is barred from advancing claims which she could have brought under those circumstances.

Huber contends that the trial court's dismissal of her complaint is contrary to the intent of the Open Door Law and the Public Lawsuit statutes. She claims it effectively requires that once an action brought under the Open Door Law is declared to be a public lawsuit, all plaintiffs must bring all actions on the merits within the umbrella of the Open Door Lawsuit or suffer a rain of dismissal. That is indeed correct—as applied to Open Door Law actions declared to be public lawsuits. While Ind. Code § 34-4-17-3 contemplates the type of actions taken under the Open Door Law, *Pepinsky v. Monroe County Council*, Ind., 461 N.E.2d 128, 134, it does not follow that all Open Door Law cases regarding public projects must be characterized as public lawsuits under Ind.Code § 34-4-17-3. In many instances an initial Open Door Law challenge of a board's actions would not bar a subsequent attack on the merits of the public improvement.[5]

Indeed, the outcome in this case is in large part due to the strategy adopted by the plaintiff and her compatriots in the Franklin County Taxpayers Association. After the Association failed on its original complaint, the Association's president individually filed a new claim seeking to halt the school construction by alleging that the construction would increase the general tax rate and therefore have a negative impact on his property value. About the same time, Huber, whose affiliation with the Association is clear, filed the present suit. The use of different named plaintiffs, suing in their various capacities, veils only thinly repeated challenges to the school project by the Taxpayers Association. It is exactly this fragmentation of litigation and the corresponding inherent delays which the Public Lawsuit statutes were designed to prevent.

As to the trial court's injunction preventing Huber and other members of the Franklin County Taxpayers Association from filing further actions, we find no error. Injunctive relief may be granted when the plaintiff's production of litigation amounts to an abuse of process. *Cf. State ex rel. Clay Community Schools v. Parke Circuit Court* (1979), 271 Ind. 266, 392 N.E.2d 804; *State ex rel. Sekerez v. Lake Superior Court* (1975), 263 Ind. 601, 335 N.E.2d 199. The trial court merely enjoined the parties from filing public lawsuits on the same subject matter—suits which they had no right to file. Ind.Code §§ 34-4-17-5, -8.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.

---

**5.** For instance, a newspaper reporter who does not receive required notice of a board meeting may bring an action under the Open Door Law. He suffers particularized harm different from that of the public at large and therefore his suit would not fall within Ind.Code §§ 34-4-17-1 to -8. Consequently, a subsequent public lawsuit questioning the action taken by the board at that meeting could be brought.